[No. 17230-5-II.   Division Two.   March 8, 1996.]

DANNY BAKER, ET AL., *Respondents*, v. HENRY T. SCHATZ, D/B/A/ GENERAL PLASTICS MANUFACTURING COMPANY, *Petitioner*.

*John L. Messina, Stephen L. Bulzomi,* and *David A. Bufalini,* for petitioner.

*K. Michael Jennings, Edward R. Lindstrom,* and *McGavick Graves, P.S.,* for respondents.

WIGGINS, J.* — Employees of General Plastics Manufacturing Company brought this action against the company, alleging that it had intentionally exposed them to toxic chemicals that harmed them. General Plastics moved for summary judgment of dismissal based on the employer's immunity under the Industrial Insurance Act. The employees argued that their injuries resulted from "the deliberate intention of his or her employer to produce such injury" within the meaning of RCW 51.24.020, giving them a cause of action against the employer. The trial court denied summary judgment and our commissioner granted discretionary review. We affirm, holding that the employees have presented sufficient evidence that the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.

## FACTS

The respondents are former employees of General Plastics. During their employment with General Plastics, the employees were exposed to hazardous chemicals and experienced serious health problems. The employees sued General Plastics, alleging:

> While plaintiffs were working as employees of the defendant General Plastics, said defendant, through its employees and agents, and the defendant, Henry Schatz, over a period of several months, did intentionally act in such a fashion so as to expose plaintiffs and their spouses to toxic chemicals, which exposure has caused plaintiffs and their spouses severe bodily injury and other harm.

General Plastics moved for summary judgment, arguing that the employees could not produce evidence to demonstrate that General Plastics specifically intended to injure them. General Plastics filed the affidavit of its President, Henry Schatz, denying any intention to injure the em-

---

*Judge Charles K. Wiggins was a member of the Court of Appeals, Division Two, at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

778

ployees: "At no time have I had any intent to injure the Plaintiffs, any individual Plaintiff, or any other employee of General Plastics, in any way or by any means." General Plastics filed affidavits including the identical assertion by Chief Chemist Mark Ritchey, Production Supervisor William Deatherage, and Assistant Production Supervisor Dale Gustafson. Significantly, none of the managers specifically denied the allegation that they intentionally exposed the employees to toxic chemicals.

The employees filed responsive affidavits detailing repeated exposures to toxic chemicals, health problems, repeated reports to management about the exposures and health problems, and management's consistent denial that the chemicals caused any problems. Danny Baker's testimony is illustrative. In his first three weeks of employment, he used a chemical known as Release B, which caused breathing difficulties eventually developing into bronchitis and pneumonia. Baker was transferred to a different department, but continued to experience breathing difficulties, skin rashes, nausea and headaches. He complained to management but was told that none of the chemicals were harming him. On one occasion he complained to Production Supervisor Deatheridge, who denied that the chemicals caused any problems, and said, "if your crew doesn't like it, the door's right there." On another occasion he complained to Assistant Production Supervisor Gustafson about methylene chloride, a solvent used in the plant, pointing out that the Material Data Safety Sheet recommended various precautions in using the chemical. Gustafson replied that the methylene chloride was safe and was used in surgeries and for decaffeinating coffee.

Other employees testified that they were repeatedly told to use methylene chloride to wash other chemicals off their arms and hands. Other employees also testified that they complained repeatedly to General Plastics supervisors that the chemicals in the plant were causing breathing difficulties, severe headaches, daily nausea, dizziness and

skin rashes. Employees passed out and were treated a number of times for such problems at nearby hospital emergency rooms. Employees reported that General Plastics management denied that the employees' health problems were caused by the chemicals—they attributed the problems to the flu or the employees' smoking or other bad habits.

The employees also presented deposition testimony in which General Plastics management acknowledged that employees had complained about health problems from chemical exposure. President Schatz admitted that he had become aware of the hazards of overexposure to methylene chloride in the mid-1980s. Chief Chemist Ritchey admitted that both he and President Schatz were aware of the publications warning of the hazards of methylene chloride. He admitted that the manufacturer warns against allowing methylene chloride to contact the skin and that washing with methylene chloride would not be a recommended practice. Both Gustafson and Schatz denied ever having told any employee they could bathe in methylene chloride. Schatz admitted he understood that workers faced a potential health risk if they were exposed to toxic materials above permissible levels. Schatz also admitted that he was aware of employee complaints to the Department of Labor and Industries about unsafe working conditions and that the Department had cited General Plastics for exposing workers to chemicals.

The trial court denied the company's motion for summary judgment, relying on two Oregon cases for the proposition that specific intent to injure can be inferred from the circumstances, most notably, the continuous exposure to chemicals. Our Commissioner granted discretionary review of the denial of summary judgment.

### Analysis

The Industrial Insurance Act (IIA), RCW 51.04 et seq., provides exclusive remedies for injuries suffered by work-

ers. In all but a few instances, the IIA divests the courts of jurisdiction over actions brought by injured workers against their employers.[1] The only exception pertinent in this appeal is provided by RCW 51.24.020:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

This statutory language was first construed in *Delthony v. Standard Furniture Co.*[2] The *Delthony* court adopted Oregon's interpretation of "deliberate intention":

> by the words "deliberate intention to produce the injury" . . . the lawmakers meant to imply that the employer must have determined to injure an employe[e] and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross.[3]

Washington courts have consistently required proof of a specific intent to injure and emphasized that the requisite intention relates to the injury, not to the act causing the injury.[4] This is a very difficult standard to meet. In fact, up until 1995, Washington courts have found deliberate intention to injure only when there has been a physical assault by one worker against another.[5]

---

[1]*See* RCW 51.04.010.

[2]119 Wash. 298, 205 P. 379 (1922).

[3]*Delthony*, 119 Wash. at 300 (quoting *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 155 P. 703, 705 (1916)).

[4]*See, e.g., Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 584, 547 P.2d 856 (1976); *Nielson v. Wolfkill Corp.*, 47 Wn. App. 352, 355-56, 734 P.2d 961, *review denied*, 109 Wn.2d 1008 (1987).

[5]*Perry v. Beverage*, 121 Wash. 652, 209 P. 1102 (1922), *different results reached on reh'g*, 214 P. 146 (1923) (employer's supervisor struck plaintiff in face with water pitcher); *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 856 P.2d 410

■ In the recent decision *Birklid v. Boeing, Co.,*[6] the Washington Supreme Court reexamined the meaning of deliberate intention. The *Birklid* court ruled that the statutory wording of RCW 51.24.020 must mean something more than assault and battery; if the Legislature had intended to limit the exception to physical assault, it would have said so directly, rather than using the words "deliberate intention . . . to produce such injury."[7] The court adopted an actual knowledge test:

> We hold the phrase "deliberate intention" in RCW 51.24.020 means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.[8]

Using this new definition of "deliberate intention," the court ruled that the plaintiffs had produced sufficient evidence to withstand a motion for summary judgment.[9] The *Birklid* court noted that the "central distinguishing fact" of the *Birklid* case was that "Boeing here knew in advance its workers would become ill from the phenol-formaldehyde fumes, yet put the new resin into production" and "observed its workers becoming ill from the exposure."[10] Under such circumstances, the injury to the employees was not accidental. In contrast, in all previous Washington cases, although the employer knew it was exposing its workers to risk, the workers were not being injured until the accident occurred.

■ Using the definition of "deliberate intention" enun-

---

(1993) (one worker driving a forklift purposely crushed another worker between two drums).

[6]127 Wn.2d 853, 904 P.2d 278 (1995).

[7]*Birklid*, 127 Wn.2d at 862- 63.

[8]*Birklid*, 127 Wn.2d at 865.

[9]*Birklid*, 127 Wn.2d at 865-66.

[10]*Birklid*, 127 Wn.2d at 863.

ciated in *Birklid*, we examine whether the trial court erred in denying General Plastics' motion for summary judgment. The appellate court reviews de novo a lower court's denial of a motion for summary judgment and engages in the same inquiry as the court from which the appeal is taken.[11] Generally, the party moving for summary judgment has the burden of showing that no genuine issue on a material fact exists.[12] Summary judgment should only be granted if after considering all the pleadings, affidavits, depositions or admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said (1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgement as a matter of law.[13]

General Plastics relied in the trial court and relies in this court on the express denial of its management that General Plastics intended to injure any employee. Prior cases support General Plastics, having held that an employer that denies it deliberately intended to injure its employee has made a prima facie case.[14] The burden then shifts to the employee to produce facts creating a genuine issue whether the employer had "deliberate intention" to injure its employee. We hold that the *Birklid* decision impliedly overruled this shift in the burden of proof when *Birklid* redefined the standard of proving an intentional injury. *Birklid* altered prior case law interpreting RCW 51.24.020, replacing the prior test — specific intent to injure — with a new test — actual knowledge that an injury was certain to occur and willful disregard of that

[11]*Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 394-95, 823 P.2d 499 (1992).

[12]*LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

[13]*Peterick v. State*, 22 Wn. App. 163, 180-81, 589 P.2d 250 (1977); *see also Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963).

[14]*See Foster*, 86 Wn.2d at 584; *Peterick*, 22 Wn. App. at 181; *Winterroth v. Meats, Inc.*, 10 Wn. App. 7, 12, 516 P.2d 522 (1973).

knowledge.[15] Despite the affidavits of General Plastics management that they had no intent to injure the plaintiffs, management might still have known that injury was certain to occur, and might willfully have disregarded that knowledge. Under the *Birklid* test, General Plastics never demonstrated the absence of an issue of material fact, never made out a prima facie case, and the burden never shifted to the employees to produce any evidence to oppose summary judgment. We could uphold the denial of summary judgment on this ground alone.

■ Regardless of the burden of proof, the plaintiffs have alleged facts supporting an inference that General Plastics' supervisors knew that the employees were suffering from chemical-related illnesses and that, unless the working environment was changed, continuing injury was certain. General Plastics supervisors and Shatz were aware of the health risks posed by the chemicals used in the plant. Specifically, the supervisors knew that the Material Safety Data Sheet (MSDS) for methylene chloride stated that one should avoid skin contact with the substance. Nonetheless, the employees assert that plant supervisors instructed them to wash their hands and arms with methyl chloride. Most importantly, the employees stated, and management admitted, that employees complained repeatedly to General Plastics supervisors that the chemicals in the plant were causing health problems. Viewing the evidence in a light most favorable to the employees, a jury could infer that General Plastics supervisors had actual knowledge that the plant's practices with regard to methylene chloride exposed employees to certain, continuing injury.

The employees have also alleged facts supporting an inference that General Plastics willfully disregarded the knowledge that the working environment at the plant would cause continuing injury to its employees. Employ-

---

[15]The *Birklid* court recognized that it was changing the law when it stated that "the plaintiffs are incorrect in assuming that the prior case law under RCW 51.24.020 would afford them a cause of action." 127 Wn.2d at 862.

ees assert that, upon complaining of illness, General Plastics supervisors and Shatz told them that the chemicals used at the plant were safe—methylene chloride was so safe you could bathe in it—and that any health problems they were experiencing were not caused by the chemicals. The employees also maintain that the supervisors continued to instruct them to wash their hands and arms off with methylene chloride. Additionally, it is clear that General Plastics made no effort of record to alter or improve the working environment at the plant. Although the supervisors deny they made representations to the employees that the chemical was safe, the employees' allegations are sufficient to create a genuine issue whether General Plastics willfully disregarded knowledge that the chemical environment at the plant was injuring its employees.

The present case is remarkably similar to *Birklid*. Just as Boeing knew that exposing its employees to phenol-formaldehyde would cause and did cause injury (dizziness, dryness in the nose and throat, burning eyes, skin rashes, headaches and nausea), here General Plastics knew its employees were being injured by the working environment at the plant and that if the environment was not altered, it would, with certainty, continue to injure them. General Plastics' refusal to alter the working environment appears to be in willful disregard of the knowledge that the chemicals in the plant were injuring General Plastics' employees. The employees are entitled to have a jury determine whether General Plastics deliberately intended to injure its employees.

In sum, the plaintiffs have presented evidence creating a genuine issue of material fact whether General Plastics had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. Although we base our decision on different grounds than relied upon by

the trial court,[16] we affirm the court's denial of General Plastics' motion for summary judgment.

HOUGHTON, A.C.J., and MORGAN, J., concur.

Review denied at 129 Wn.2d 1031 (1996).

---

[16]*See Redding v. Virginia Mason Medical Ctr.,* 75 Wn. App. 424, 426, 878 P.2d 483 (1994) (an appellate court may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record); *see also LaMon v. Butler,* 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied,* 493 U.S. 814 (1989).