29 P.3d 1268 (2001)
Kira HOPE, Appellant/Cross Respondent,
v.
LARRY'S MARKETS, Respondents/Cross Appellant.
No. 47207-1-I.
Court of Appeals of Washington, Division 1.
August 27, 2001.
*1270 Richard J. Hughes, Seattle, for Appellant.
Gordon Charles King, Eims & Flynn P.S., Seattle, for Respondent.
*1269 WEBSTER, J.
For approximately seven months, Kira Hope was exposed to harsh chemical cleaners at her place of work, the deli department of a Larry's Markets store. She continuously complained to store management that the chemicals were causing her rashes, but the store failed to take adequate measures to prevent her exposure to the chemicals. Hope sued Larry's Markets, arguing that Larry's deliberately injured her and that this deliberate injury constituted outrageous conduct. She appeals from a grant of summary judgment for Larry's, and we reverse. Larry's requests fees on appeal, which are denied.

FACTS
In September 1998, Larry's Markets stopped using "off the shelf cleaners to clean its deli and started to use industrial strength cleaners instead. Five industrial cleaners were used: J 512 sanitizer, PanClean, Glance window cleaner, Block Whitener, and Number 8 General Purpose floor cleaner.
The store provided its management with Material Safety Data Sheets (MSDS) for each cleaner. In her deposition, Lynne Taylor, the manager of the deli at the Bellevue store, testified that she was provided with MSDS for each of the chemicals. She testified that she was aware that Block Whitener could cause severe skin irritation and that if skin contact occurred, one should flush the area immediately with water and seek medical attention.[1]
Furthermore, she testified that PanClean and J12 were used in both diluted and undiluted forms because the dispensing system for the products was broken. The MSDS for J-512 indicates that in its concentrated form, it is highly hazardous.[2]
*1271 Soon after the store began using the industrial strength cleaners, Hope and other employees began to experience rashes and blisters on their hands, arms, legs, and chests.
In her Declaration, Hope described her reaction to the chemicals as a rash on her upper arms that increased in size and severity traveling down the entirety of her arms and hands and onto her chest. Furthermore, she stated that the rash "burned, bled, kept me up at night, was a constant irritant and I noticed that I was very sick during the year." CP 92. She also stated that the rashes lasted throughout her employment and remained for two to three weeks following her last day of work at the store.
Other Larry's Markets employees experienced similar symptoms. Hope and her co-workers complained about the chemicals to their union, UFCW Local 1105, in the fall of 1998.
In her deposition, Lynne Taylor testified that Hope had complained to her of her rashes several different times, and that she had seen rashes on Hope's hands and arms. Taylor acknowledged that Hope had told her that her hands had blisters and would bleed because of the rash, and that she felt a burning sensation in her hands. Taylor acknowledged that other employees had complained about the effects of the chemicals.
Hope first visited a doctor on September 23, 1998. The doctor diagnosed the rash as an allergic chemical reaction. The doctor wrote a letter to Larry's excusing Hope from work for medical reasons. The doctor indicated in the letter that her rash was caused by work-related contact and that she needed to be protected from exposure to the chemicals.
After Hope's visit to the doctor, she told Lynne Taylor that the chemicals were causing her rash. Taylor then removed the cleaners and replaced them with the off-the-shelf cleaners that had previously been in use.
One week later, a meeting was held with Hope, the store manager, the assistant deli manager, and two representatives of Coast Wide, the supplier of the chemicals. Hope stated in her declaration that the other people present at the meeting tried to convince her through intimidation that the cleaners were safe. In response, Hope told them about other workers who were suffering from reactions to the Coast Wide chemicals.
After this meeting, the Coast Wide chemicals were reintroduced and Hope was required to use them.
The store provided Hope with wrist length dishwashing gloves to protect her from the chemicals. Hope's upper arms were still exposed and her cleaning duties required that she immerse the entire length of her arms into cleaning solutions. Therefore, the gloves would fill with water and trap the chemicals against her skin. Moreover, gloves did not protect her chest from fumes from the chemicals which were causing the rash on her chest.
The store also provided Hope with a "barrier lotion" to protect her skin from the chemicals. Hope used the lotion but it did not stop her rash. In her deposition, Taylor admitted that the lotion provided to the employees was water soluble and would therefore be ineffective against chemicals in a water base.
On March 17, 1999, Hope submitted a letter giving Larry's two weeks notice of her resignation. Her rashes intensified and she saw a doctor for a third time on March 19, 1999. The doctor wrote a letter to Larry's indicating that her rash was exacerbated by the chemicals, if not caused by them. The letter further indicated that Hope's hands should not get wet or be in contact with the chemicals.
On March 21, 1999, her first shift after her doctor visit, Hope called in sick because of her rash. Ms. Taylor called her back and told her that they should "terminate their relationship." CP 95. Hope called her union and then, in response, the store offered her a position as a grocery bagger for the remainder of her employment. Hope declined the offer because she did not want to work in a hostile environment.
Hope filed a complaint in King County Superior Court alleging personal injuries resulting from her employer's deliberate and outrageous acts. Specifically, she alleged *1272 that Larry's acted with deliberate intent to injure her, and that Larry's was liable for the tort of outrage and for negligent infliction of emotional distress.
Larry's moved for summary judgment and to dismiss for failure to state a claim. The trial court determined that it lacked subject matter jurisdiction and that the complaint failed to state a claim.
Hope's attorney signed the order granting dismissal, but overlooked the words "approved as to form and content" above the signature line. Her attorney immediately moved for an order vacating, inter alia, the language "approved as to content", which was denied.

DISCUSSION
Hope first argues that the trial court erred in granting Larry's motion to dismiss because Larry's supported its motion with materials outside the complaint. A court should grant dismissal only where "it appears, beyond doubt, that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief."[3] A motion to dismiss pursuant to CR 12(b)(6) that is supported by materials outside of the complaint is treated as a motion for summary judgment.[4] Since Larry's provided affidavits and materials outside the complaint (CP 48-69; 85-90; 201-212), the motion to dismiss must be treated as one for summary judgment. Dismissal for failure to state a claim was error.
Standard of Review
The standard of review for summary judgment is well settled.[5] Initially the burden is on the party moving for summary judgment to prove by uncontroverted facts that there is no genuine issue of material fact.[6] If the moving party does not sustain that burden, summary judgment should not be entered, irrespective of whether the nonmoving party has submitted affidavits or other materials.[7] A material fact is one upon which the outcome of the litigation relies in whole or in part.[8]
Analysis
Hope argues that the trial court erred in granting Larry's motion for summary judgment for two reasons. First, she argues that the floor cleaner used by Larry's was dangerous and required protective measures. She argues that Larry's failed to produce evidence to show the absence of a material fact with respect to the safety of the floor cleaner. Therefore, she argues, the trial court's grant of summary judgment was error. But whether the floor cleaner was dangerous is only a material fact if Hope has pled facts sufficient for a trier of fact to find that her employer intentionally injured her. Larry's failure to produce evidence to rebut Hope's assertion that it was dangerous does not by itself constitute a failure to prove the absence of any material facts. Therefore, Hope's first argument fails.
Hope further argues that the trial court erred by granting summary judgment because material issues of fact are disputed. She submits that the safety measures that Larry's took were illusory, limited, ineffective, and failed to protect her.[9]
*1273 Hope argues that Larry's acted with deliberate intent to injure her. RCW 51.24.020 provides for an exception to the Industrial Insurance Act "[i]f injury results to a worker from the deliberate intention of his or her employer to produce such injury". Cases interpreting RCW 51.24.020 to encompass injuries from continuous exposure to chemicals in the workplace include Birklid v. Boeing, 127 Wash.2d 853, 904 P.2d 278 (1995), and Baker v. Schatz, 80 Wash.App. 775, 912 P.2d 501 (1996). In Birklid, Boeing continued to expose its workers to phenolic, a toxic chemical that caused rashes, headaches, and dizziness, even though management knew that these symptoms were being caused by the phenolic. In Baker, employees testified that they complained repeatedly that chemicals in the plant were causing them rashes, breathing difficulties, headaches, and nausea.
In Birklid, the Supreme Court interpreted the statute's requirement of a "deliberate intention" to mean that "the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." Birklid at 865, 904 P.2d 278. Boeing was found to satisfy the actual knowledge prong of the deliberate injury test because it knew that its chemicals were dangerous and it observed its employees suffering the ill effects of phenolic. The Supreme Court observed that chemicals play a unique role in creating workplace injuries that satisfy the "deliberate intent" test:
In all the other Washington cases, while the employer may have been aware that it was exposing its workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. There was no accident here.... [T]he acts alleged go beyond gross negligence of the employer and involve willful disregard of actual knowledge by the employer of continuing injuries to employees.
Birklid at 863, 904 P.2d 278. In cases involving chemical exposure, the repeated, continuous injury and the observation of the injury by the employer can satisfy the "actual knowledge" prong.
The law does not require an actual intent to injure the employee. Baker at 782, 912 P.2d 501. In Baker, employees testified that they complained repeatedly about the ill effects of the chemicals used in the plant. Baker at 778-79, 912 P.2d 501. Allegations supporting an inference that the employer knew that its employees were suffering from chemical-related illness and that the illness would continue unless the exposure stopped satisfied the "actual knowledge" prong. Baker at 784, 912 P.2d 501.
Here, Hope presented her declaration, the declaration of several co-workers, the declaration of her union representative, and the deposition of her manager, Lynne Taylor. These documents showed that repeated complaints were made to Larry's that the chemicals were causing the employees burns and rashes.
Because Hope has presented evidence that Larry's knew that its employees were being continuously injured by the chemicals, she produced evidence sufficient to establish that Larry's had "actual knowledge that an injury was certain to occur."
Once a plaintiff establishes that the employer had actual knowledge that an injury was certain to occur, a plaintiff will be able to establish "willful disregard of that knowledge" when she produces evidence sufficient to challenge the correctness or effectiveness of an employer's remedial measures. Stenger v. Stanwood School Dist., 95 Wash.App. 802, 816-17, 977 P.2d 660 (1999). In Stenger, the school district purportedly made numerous attempts to curb or lessen a student's outbursts that resulted in injury to staff. However, the remedial measures were ineffective, and the "willful disregard" prong was met.
Here, Larry's submits that it took several remedial steps.[10] But Hope presented *1274 evidence to show that these measures were illusory and ineffective.[11] Furthermore, remedial measures do not insulate an employer from liability if repeated injury follows failed measures.
Because the evidence produced by Hope was sufficient to justify a trier of fact in finding that there was a deliberate intention on the part of Larry's to injure her, Larry's was not entitled to judgment as a matter of law. The trial court therefore erred in granting Larry's motion for summary judgment.
Subject Matter Jurisdiction
Hope argues that the trial court erred in dismissing her case for lack of subject matter jurisdiction. Because Hope's deliberate injury claim is outside the bar to recovery imposed by the Industrial Insurance Act, the trial court erred in dismissing her case for lack of subject matter jurisdiction. However, her outrage claim was properly dismissed by the trial court.
Deliberate Intent to Injure
While Washington law has recognized that industrial insurance is the exclusive remedy of the employee injured in the course of employment, and barred lawsuits by employees against employers by its enactment of the Industrial Insurance Act (IIA), the Legislature also established an exception to the rule of exclusivity for circumstances in which an employer deliberately injures an employee. In those circumstances, an employee retains the right to sue the employer. As noted above, RCW 51.24.020 embodies this "deliberate injury" exception. Hope has stated a claim under this statute, and that claim is exempt from the IIA.
Outrage
Outrageous conduct is conduct "which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim `Outrageous!'"[12] The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[13]
The question of whether certain conduct is sufficiently outrageous is ordinarily for the jury, but it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability.[14] While Hope has alleged a fact pattern similar to that in Birklid, Larry's Markets' conduct does not arise to the level sufficient to sustain an outrage claim. While Larry's conduct may have resulted in deliberate and willful injury to her, it was not sufficiently extreme to be regarded as utterly intolerable in a civilized society. The court did not err in dismissing the claim for outrage on summary judgment.

*1275 CR 60
Hope argues that the trial court erred by refusing to grant her CR 60 motion to vacate the order of dismissal where her attorney mistakenly signed the order "approved as to form and content" where the attorney did not have authority to approve the dismissal "as to content." A mistaken signature of an order of dismissal is ineffective and a trial court should grant a motion to vacate or reconsider that order.[15]
It has long been the rule in Washington that motions to vacate or for relief from judgments are addressed to the sound discretion of the trial court, whose judgment will not be disturbed absent a showing of a clear or manifest abuse of that discretion.[16] An abuse of discretion exists only when no reasonable person would take the position adopted by the trial court.[17] As there was no reason to deny the motion, the trial court abused its discretion.

ATTORNEY FEES
Larry's argues that the court erred by failing to award it attorneys' fees based on RCW 4.84.185. In order to award fees pursuant to that statute, Larry's must show that the claim was frivolous. Larry's has stipulated that Hope's claim was not sanctionable under CR 11. Courts have defined a frivolous claim as one that cannot be supported by any rational argument on the law or facts.[18] Here, there is no rational argument that Hope's claim is frivolous.
We reverse and remand for a trial on the merits.
GROSSE, J., and APPELWICK, J., concur.
NOTES
[1] The MSDS for Block Whitener indicates that it is an industrial or institutional cleaning product which constitutes a "moderate" health hazard. CP 133. It indicates that it causes severe skin irritation and may exacerbate preexisting skin conditions. If Block Whitener comes into contact with skin, the MSDS recommends that the person flush the skin with water for at least 15 to 20 minutes and to get medical attention.
[2] The MSDS indicates that J-512 is an industrial or institutional sanitizer. It indicates that if the skin comes into contact with J-512, the chemical is "corrosive and may cause permanent damage." CP 138. If it is inhaled, it may cause irritation or corrosive effects to the nose, throat, and respiratory tract. If the eyes are exposed to J-512, the chemical may cause blindness. If the skin comes in contact with J-512, the individual is instructed to flush immediately with plenty of water for 15-20 minutes and to get medical attention immediately.
[3] Danzig v. Danzig, 79 Wash.App. 612, 616, 904 P.2d 312 (1995).
[4] St. Yves v. Mid State Bank, 111 Wash.2d 374, 377, 757 P.2d 1384 (1988).
[5] When reviewing an order for summary judgment, this court engages in the same inquiry as the trial court, and will affirm summary judgment if there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. Wilson Court Ltd. Partnership v. Tony Maroni's, Inc., 134 Wash.2d 692, 698, 952 P.2d 590 (1998); see also CR 56(c). Questions of law are reviewed de novo. See id.
[6] LaPlante v. State, 85 Wash.2d 154, 158, 531 P.2d 299 (1975); Rossiter v. Moore, 59 Wash.2d 722, 370 P.2d 250 (1962); 6 J. Moore, Federal Practice P 56.07, P 56.15(3) (2d Ed. 1948).
[7] Preston v. Duncan, 55 Wash.2d 678, 683, 349 P.2d 605 (1960), see also Trautman, Motions for Summary Judgment: Their Use and Effect in Washington, 45 Wash.L.Rev. 1, 15 (1970).
[8] Amant v. Pacific Power & Light Co., 10 Wash.App. 785, 520 P.2d 181 (1974).
[9] Larry's argues that Hope may not argue that the measures it took were ineffective because she did not make that argument below. RAP 2.4(a). Larry's is incorrect. Hope made this argument below and in her motion for reconsideration.
[10] These included: the removal of the chemicals for one week; the meeting with the Coast Wide representatives; the lotion; the wrist-length gloves; a shift change; suggesting that Hope apply for a transfer; offering her a transfer to the cheese department; and offering her the job of courtesy clerk after she gave her two weeks' notice. See Brief of Respondent at 11-12.
[11] She presented evidence to show that the removal of the chemicals for one week was not an effective remedial measure because the chemicals were reintroduced after one week. Furthermore, the meeting with the Coast Wide representatives did nothing to prevent Hope from being exposed to the chemicals, and in fact resulted in the chemicals being reintroduced. She presented evidence that the lotion did not protect her hands because it dissolved in the water and that the wrist-length gloves did not protect her hands, arms, and chest from the chemicals. She presented evidence that she was given the shift change before she developed her rash, so it was not a remedial measure. Moreover, she presented evidence that the shift change did not eliminate her exposure to the chemicals. She presented evidence that, although she could have applied for a transfer, this was not a true remedial measure and that it would not eliminate her exposure to the chemicals. She presented evidence that a transfer to the cheese department would not have prevented her exposure to the chemicals. In addition, she presented evidence that she was told that if she kept working in the deli she would soon be promoted and would not have to work with the chemicals any longer. Finally, she presented evidence that offering her the job of courtesy clerk after she gave her two weeks' notice was not a remedial measure because it occurred only after she tendered her resignation.
[12] Contreras v. Crown Zellerbach Corp., 88 Wash.2d 735, 740, 565 P.2d 1173 (1977) (quoting Browning v. Slenderella Sys., 54 Wash.2d 440, 448, 341 P.2d 859 (1959)).
[13] Grimsby v. Samson, 85 Wash.2d 52, 59, 530 P.2d 291 (1975).
[14] Phillips v. Hardwick, 29 Wash.App. 382, 387, 628 P.2d 506 (1981).
[15] Morgan v. Burks, 17 Wash.App. 193, 199-200, 563 P.2d 1260 (1977); CR 60.
[16] United Pac. Ins. Co. v. Discount Co., 15 Wash.App. 559, 550 P.2d 699 (1976).
[17] State v. Batten, 16 Wash.App. 313, 556 P.2d 551 (1976).
[18] Forster v. Pierce County, 99 Wash.App. 168, 991 P.2d 687 (2000).