103 P.3d 807 (2004)
Gerald A. SHELLENBARGER and Carol J. Shellenbarger, husband and wife, Appellants,
v.
LONGVIEW FIBRE COMPANY, Respondent, and
Kaiser Gypsum Company, Inc.; Combustion Engineering Inc.; and Union Carbide Corporation, Defendants.
No. 53418-1-I.
Court of Appeals of Washington, Division 1.
November 8, 2004.
Publication Ordered December 15, 2004.
*808 William J. Rutzick, Seattle, for Appellants.
Bruce D. Campbell, James R. McCullagh, Perkins Coie, LLP, Seattle, for Respondent.
Kristopher I. Tefft, Association of Washington Business, Olympia, for Amicus Curiae, Association of Washington Businesses, WA Self-Insurers Assoc.
BAKER, J.
The Shellenbargers sued Longview Fibre, Gerald Shellenbarger's former employer, for damages arising out of his exposure to asbestos in the workplace. Normally, lawsuits arising from workplace injuries would be barred under the Washington Industrial Insurance Act[1] (WIIA). But the Shellenbargers argue that Longview Fibre possessed a deliberate intent to injure, which is an exception to the bar on private causes of action under the Act. The trial court concluded that the evidence was insufficient to prove Longview Fibre acted with deliberate intent, and granted the defendant's motion for summary judgment. We affirm, holding that a reasonable fact finder could not conclude that Longview Fibre had actual knowledge of certain injury.

I.
Longview Fibre Company operated a pulp and paper mill where Gerald Shellenbarger worked as a papermaker from 1960 to 1965 and from 1976 to 1996. For the first two years of his employment, Shellenbarger worked in various positions at the mill, and in 1962 secured a permanent position as a "broke beaterman." Shellenbarger worked permanently on machines numbered four and five from 1962 to 1965. He left Longview Fibre in 1965, and spent the majority of the next ten years as an iron worker. When he returned to work at Longview Fibre in 1976, Shellenbarger worked as a spare hand for several months before obtaining a permanent position as a papermaker on machines one and four. He worked in this position for 19 years, until his doctors instructed him to stop working due to his health problems.
*809 Shellenbarger was exposed to asbestos at Longview Fibre in several ways. The most obvious exposure occurred from 1964 to 1965, when he worked as a broke beaterman on machines four and five. Shellenbarger was required to return waste paper products back into the pulp machine by adding it to large mixing vats. He was also required to add pitch controllers to the vats. From 1964 until the mid-1970s, Longview Fibre used asbestos as a pitch control agent. The asbestos came in bags. Broke beatermen would throw entire asbestos bags into some of the machines, but machine number five ran refined paper, and workers were required to slash open the bags and dump the asbestos directly into the machine. When Shellenbarger slashed asbestos bags open and dumped them into the machine, clouds of visible dust would encircle his work area.
Shellenbarger may also have come into contact with airborne asbestos during "blow downs," which occurred approximately twice a month as part of regular maintenance at Longview Fibre. Whenever a machine would break down, a crew went to the top of the machine and blew all the dust off of it in order to assist the mechanics and prevent fire. Dust would fill the air during blow downs, but the amount of asbestos within these dust clouds is uncertain.
Finally, Longview Fibre used products on its worksite that contained asbestos. Shellenbarger was required to handle dryer felts, which are machine parts that contained asbestos. Additionally, machine hoods and pipe coverings at the paper plant contained asbestos. The pipe coverings were eventually replaced with asbestos-free coverings. Shellenbarger recalls pieces of the old pipe covering falling down to the floor and blowing around the work area when the new insulation was being installed.
Longview Fibre became aware of the dangers of asbestos sometime in the 1960s. Longview Fibre purchased asbestos from Union Carbide. Union Carbide produced an asbestos toxicology report, which it gave to potential and current customers sometime in 1964. The report indicated that it was known for many years that "persons working in asbestos production were prone to develop a disabling lung disease," and advised companies to control asbestos dust exposure. There is no evidence to confirm that Longview Fibre received a copy of this report.
In 1968, Longview Fibre included a page on asbestos in its Special Hazards Manual, which was located throughout its papermaking facility. The manual warned employees that asbestos was located in the machine room, warehouse number three, and wherever asbestos insulation was cut. It also advised wearing a respirator when around asbestos dust and informed employees that exposure could lead to asbestosis. Furthermore, Longview Fibre's Vice President Thomas Vaught testified that he was informed during company training in 1968 that asbestos was used and "that it had long-term health effects if you breathe it," and he was told of the locations where it might be used throughout the mill.
In the early 1970s, Longview Fibre installed asbestos exposure controls into its workplace pursuant to the federal Occupational Safety and Health Act and the Washington Industrial Safety and Health Act. Rules were implemented to control levels of airborne asbestos and for safe asbestos handling. Additionally, Longview Fibre began conducting air sampling in 1972. The samples showed that Shellenbarger's work area did not contain excess levels of asbestos. Longview Fibre stopped using asbestos as a pitch control agent by the end of 1977 and switched to asbestos-free gaskets in the mid-1970s. By the early 1990s, it had replaced almost all of its asbestos-containing insulation, although not legally required to do so.
Shellenbarger has a lung disease called pulmonary fibrosis, which can be caused by a number of agents. In March of 2000, Shellenbarger learned his lung disease may have been caused by asbestos exposure, and that he also has a condition called asbestosis. Not everyone who inhales asbestos develops lung disease; however, medical examinations of pulmonary tissue from Shellenbarger's lungs indicated that he has levels of asbestos fibers above the usual background exposure levels.

*810 II.
We review the Shellenbargers' appeal from summary judgment de novo. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We must view the evidence in the light most favorable to the Shellenbargers.[2]
By adopting the WIIA, the State of Washington ensured that all workers injured on the job would receive compensation, regardless of fault. In exchange, however, the Legislature abolished the courts' jurisdiction to hear civil causes of action for personal work injuries, with one exception.[3] An employee may sue her employer for any damages in excess of compensation under the Act if she is injured by the "deliberate intention" of her employer.[4]
Courts have interpreted deliberate intention to mean both the specific intent to injure and willful disregard of actual knowledge that the injury would occur.[5] Specific intent to injure is equated to physical assault.[6] Willful disregard of actual knowledge has two components. First, the employer must have had actual knowledge that injury was certain to occur.[7] Second, a plaintiff must prove that the employer willfully disregarded that knowledge.[8]
The Shellenbargers claim that Longview Fibre willfully disregarded knowledge of certain injury. To satisfy the first inquiry, the Shellenbargers argue that they presented evidence sufficient for a finding of actual knowledge under the standard articulated by our Supreme Court in Birklid v. The Boeing Company.[9] In particular, they point to Longview Fibre's Special Hazards Manual and testimony of Thomas Vaught, which indicate that the company was aware of asbestos danger by 1968.
The Shellenbargers face a difficult task in proving that Longview Fibre had actual knowledge of certain injury. The Washington Supreme Court adopted a literal meaning of "certain injury" when it expressly declined to adopt the "substantial certainty" test used in some other states. It noted that the Legislature intended to give a very narrow meaning to the deliberate intent exception of the WIIA.[10]
Certainty leaves no room for chance. Washington courts have repeatedly held that known risk of harm or carelessness is not enough to establish certain injury, even when the risk is substantial.[11] For example, Schuchman v. Hoehn[12] involved a child whose hands were seriously injured by an ice making machine. The plaintiff produced evidence that the employer admitted knowing the injury would happen. Yet the court determined that there was insufficient evidence to find the injury was certain to occur, noting:
Although [the employer] reportedly admitted that she and her husband "knew this was going to happen" but just did not know when, this admission does not show actual knowledge that [the employee] was *811 certain to be the injured party. As noted above, an employer acting with even a substantial certainty that injury will occur to the employee does not have the requisite specific intent to injure that triggers the RCW 51.24.020 exception to employer immunity.
Gross negligence and the failure to follow safety procedures is not enough to show deliberate intention.[[13]]
The limited cases in which courts have held that there was a genuine issue of fact regarding knowledge of certain injury involved situations in which there was virtually no doubt injury would occur.[14]
Applying the standard articulated by Washington courts, a fact finder could not reasonably conclude that Longview Fibre had actual knowledge of certain injury. The most egregious use of asbestos occurred from 1964 to the mid- 1970s, when broke beatermen were required to slice open bags of asbestos and dump them into machine number five. Shellenbarger performed this job for one year, from 1964 to 1965. At best, the evidence establishes that Longview Fibre may have received a report in 1964 on the dangers of asbestos.
By the time Shellenbarger returned to Longview Fibre in 1976, the evidence is reasonably sufficient to establish that Longview Fibre had knowledge of the dangers of asbestos. In fact, Longview Fibre released an instructional hazards manual in 1968, implemented rules and procedures pursuant to legal requirements in 1973, and stopped using asbestos in the production process by 1977. But the relevant inquiry is not whether the employer knew it was performing a dangerous activity, but rather whether the employer knew of certain injury.[15]
The Shellenbargers argue that Longview Fibre knew asbestos was certain to cause injury and point to Vaught's testimony that he was told asbestos "had long-term health effects if you breathe it." After examining all of the evidence in the light most favorable to the Shellenbargers, however, a fact finder could not conclude that Longview Fibre knew injury was certain to occur. The Shellenbargers have taken a small piece of Vaught's testimony and construed it incorrectly. A more thorough look at the evidence Vaught supplied indicates that Longview Fibre believed the workplace was safe. We know now that asbestos exposure does not result in injury to every person, and the evidence does not suggest Longview Fibre believed otherwise 30 years ago. Workers were not exhibiting signs of injury. More importantly, Longview Fibre complied with federal and state asbestos safety standards by implementing rules and procedures. Air testing, which began in 1972, showed that Shellenbarger's work station had acceptable levels of asbestos. Although Longview Fibre may have been negligent by creating unsafe working conditions, a reasonable fact finder could not conclude that the company knew with certainty that Shellenbarger, or any employee, would be injured by asbestos exposure in the workplace.
Viewing the evidence in the Shellenbargers' favor, it is insufficient to support a finding that Longview Fibre possessed actual knowledge of certain injury. We do not *812 reach the second prong of the deliberate intent test.
AFFIRMED.
WE CONCUR: ELLINGTON, C.J., and COLEMAN, J.
NOTES
[1] Title 51 RCW.
[2] Stenger v. Stanwood Sch. Dist., 95 Wash.App. 802, 812, 977 P.2d 660 (1999).
[3] RCW 51.04.010.
[4] RCW 51.24.020.
[5] Birklid v. The Boeing Co., 127 Wash.2d 853, 862-62, 904 P.2d 278 (1995).
[6] Birklid, 127 Wash.2d at 861-62, 904 P.2d 278.
[7] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[8] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[9] 127 Wash.2d 853, 904 P.2d 278 (1995). Alternatively, the Shellenbargers argue that this court should adopt the "continually operative dangerous condition" standard for actual knowledge of certain injury, articulated by the Michigan Supreme Court in Golec v. Metal Exch. Corp., 453 Mich. 149, 551 N.W.2d 132 (1996). They argue that Michigan's interpretation is particularly persuasive because the Washington Supreme Court derived the deliberate intent standard from Michigan's industrial insurance statute. However, our Supreme Court has articulated the standard for determining certain injury under the WIIA. We cannot adopt Michigan's more lenient standard.
[10] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[11] E.g., Folsom v. Burger King, 135 Wash.2d 658, 667, 958 P.2d 301 (1998).
[12] 119 Wash.App. 61, 72, 79 P.3d 6 (2003).
[13] Schuchman, 119 Wash.App. at 72, 79 P.3d 6.
[14] For example, Birklid v. Boeing, 127 Wash.2d 853, 904 P.2d 278, and Hope v. Larry's Markets, 108 Wash.App. 185, 189-91, 29 P.3d 1268 (2001) involved employees who were forced to work with harmful chemicals in their workplace. Workers exhibited signs of illness and complained to their employers when they used the chemicals. The employers knew that injury was certain to occur, yet required the employees to continue using the chemicals. Birklid, 127 Wash.2d at 856-57, 904 P.2d 278; Hope, 108 Wash.App. at 189-91, 29 P.3d 1268. Perhaps the only case leaving any question regarding certainty was Stenger v. Stanwood Sch. Dist., 95 Wash.App. 802, 977 P.2d 660. Stenger involved injury suffered by a school aide, which was caused by a mentally handicapped student who had a history of violence. The child had inflicted over 1,300 injuries to employees in the preceding three years. Arguably, the school aide's injury was not certain because a human being's actions are not 100 percent predictable. But given the frequency of the child's outbursts and the number of injuries he inflicted, we reasoned that a jury could conclude the District had actual knowledge of certain injury. Stenger, 95 Wash.App. at 813, 977 P.2d 660.
[15] Baker v. Schatz, 80 Wash.App. 775, 780, 912 P.2d 501 (1996).