# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KARL LEE FORD,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF CORRECTIONS,<br><br>Respondent. | No. 85662-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — Karl Ford appeals a summary judgment order dismissing his lawsuit against the State and its Department of Corrections (collectively "the State") for its alleged tortious acts related to his sentencing. Ford was sentenced to life in prison without the possibility of parole under Washington's Persistent Offender Accountability Act, RCW 9.94A.570, based in part on a 1986 California battery conviction, which the department's presentence report erroneously identified as a felony rather than a misdemeanor. Ford argues the State owed him a duty to discover sentencing documents from the earlier conviction that were not obtained while drafting the presentence report. Because the State is protected by quasi-judicial immunity for the preparation of the presentence report and no statute or other tort theory cited by Ford supports a duty after sentencing to search out the documents that later showed the error, we affirm.

I

Because this matter was dismissed on a summary judgment motion, we recite the facts in the light most favorable to the nonmoving party, Ford. Shellenbarger v. Longview Fibre Co., 125 Wn. App 41, 46, 103 P.3d 807 (2004).

On January 20, 1999, Ford was found guilty of second degree felony murder, with the predicate felony of second degree assault. In re Pers. Restraint of Ford, noted at 124 Wn. App. 1046, 2004 WL 2966945, at *1. The superior court ordered a presentence report for the sentencing hearing. The presentence report, completed by the department's Community Corrections Officer Les Patton, relied on information from the California Identification Index and the Federal Bureau of Investigation to determine Ford's criminal history. Patton reviewed an abstract of a 1986 California conviction for battery with serious bodily injury when writing his report, but did not have the actual judgment and sentence. The abstract showed "the court of jurisdiction, the offender's name, the crime as charged, and usually the disposition of that crime" but did not specify whether Ford was sentenced to a felony or a misdemeanor.

Patton used a then-current set of California Penal Code books to prepare his report. He testified he "took the charges that [were] listed in the Court abstracts, the charge, looked it up in the book, and that's where I got the information to make a comparable." Patton provided the following disposition for the 1986 conviction:

"9/17/86: Convicted of 243(d) PC. Battery With Serious Bodily Injury—Felony—

12 Months Probation." Underneath the disposition, Patton wrote,

> The California Penal Code, Section 242 states: A battery is any willful and unlawful use of force or violence upon the person of another. 243(d) states: When a battery is committed against any person and serious bodily injury is inflicted. The elements of this crime appear to correspond with RCW 9A.36.011(1)(c) Assault in the First Degree or in the alternative, RCW 9A.36.021(1)(a), Assault, 2nd Degree.

Patton called the relevant California court and stated that "[t]he three oldest

convictions had to be retrieved from their archives and when received, they will be

forwarded to the Court." The department did not have a policy in place at that time

to ensure that it received the underlying paperwork for a presentence report.

Patton testified he did not remember whether the California court sent the

documents, "But if they had and I saw that [the 1986 conviction] was a

[misdemeanor], I certainly would have taken it to the Court," even after sentencing.

Patton concluded the 1986 conviction was among convictions that

"appear[ed] to constitute strikes under [the Act]." However, both Patton and the

department testified that if the 1986 conviction had been a misdemeanor under

California law, it would not be considered a qualified conviction under the statute.

Patton calculated an offender score of 9 and recommended a sentence within the

standard range, noting that Ford's case may meet the criteria for a persistent

offender sentence under the Act.

At the 1999 sentencing hearing, the prosecutor had not yet received a

certified copy of the 1986 conviction but stated that Ford's attorney had "not

expressed to [him] any reservations about the validity of the factual material that

3

is set forth in the [presentence report]." The prosecutor stated the current conviction appeared to be Ford's fourth qualifying conviction supporting mandatory life in prison without the possibility of parole. The three prior qualifying convictions were: the 1986 California battery with serious bodily harm conviction; a 1988 California robbery conviction; and a 1991 California grand theft from a person conviction. Ford's attorney stated, "[W]e have no issues with regards to the prior convictions" within the presentence report. The superior court sentenced Ford to life in prison without the possibility of parole or other release under the Act.

Ford's conviction was later vacated under Andress, which held assault could not serve as the predicate crime of second degree felony murder under former RCW 9A.32.050(1)(b) (1976). Ford, 2004 WL 2966945, at *1 (citing In re Personal Restraint of Andress, 147 Wn.2d 602, 616, 56 P.3d 981 (2002).[1]

In 2005, Ford was resentenced. The State relied on the original 1999 presentence report. Ford's attorney, Bevan Maxey, argued the State had not sufficiently proven the existence of the 1986 conviction because it did not produce a judgment and sentence. Additionally, Maxey argued that the elements of at least two of the California convictions did not appear to be serious enough to qualify as Washington serious offenses without more evidence of the underlying facts. The State conceded it no longer considered the 1991 grand theft conviction a qualifying

_____

[1] In 2023, Andress was superseded by statute. Bowman v. State, 162 Wn.2d 325, 328 172 P.3d 681 (2007) (quoting LAWS OF 2003, ch. 3, § 1 (" 'The legislature does not agree with or accept the courts finding of legislative intent in [Andress] . . . and reasserts that assault has always been and still remains a predicate offense for felony murder in the second degree.' " (some alterations in original))).

4

conviction under the Act. But the State argued the 1986 battery conviction and 1988 robbery conviction qualified under the Act. The superior court found that the 1986 conviction constituted a qualifying conviction in Washington and resentenced Ford to life in prison without the possibility of parole.

In 2011, Maxey received California court documents showing the 1986 battery conviction was adjudicated as a misdemeanor. Ford hired counsel to file a personal restraint petition. That attorney neglected to do so and ultimately resigned from practice in lieu of further disciplinary proceedings. Ford recovered his retainer through the state bar association client protection fund and re-hired Maxey.

In 2016, Ford filed a motion for resentencing. The State opposed the motion, arguing an out-of-state conviction need not be designated a felony to be a most serious offense under the Act. The superior court disagreed, ruling the California misdemeanor conviction was not a qualifying conviction under the Act because out-of-state convictions must be "felony" convictions equivalent to most serious offenses in Washington. The superior court granted Ford's motion for resentencing, finding that his judgment and sentence was facially invalid and resulted in a miscarriage of justice. On March 20, 2017, the superior court entered an amended judgment and sentence. Based on a new offender score of 7 instead of 9, the superior court resentenced Ford to the high end of the range for the second degree assault conviction, 57 months. At that point, Ford had been imprisoned for over 217 months. Ford was released two days later.

In 2018, Ford filed a lawsuit against the State and two community corrections officers, including Patton, alleging state and federal claims based on the presentence report. The defendants removed the lawsuit to federal court and moved to dismiss all claims. The federal court dismissed Ford's federal claims and remanded the action to state court. The defendants moved to dismiss the state claims, arguing quasi-judicial immunity and statute of limitations. The superior court denied the motion to dismiss without prejudice, and granted Ford leave to amend, which left only Ford's claims against the State for unlawful imprisonment, negligence, negligent infliction of emotional distress, and outrage.

In 2022, the State moved for summary judgment, arguing (1) failure to state a claim for unlawful imprisonment, (2) failure to state a claim for negligence, (3) failure to state a claim for infliction of emotional distress, and (4) that the action was time barred. Ford submitted a declaration in response to the motion for summary judgment and attached an expert witness declaration opining the department had an ongoing responsibility to verify whether an offense was a felony or not and the responsibility continued until it was verified. The superior court denied the motion because "the issue of whether [the State] had a duty to [Ford] was subject to debate based on the testimony of the expert opinion from the plaintiff."

The State filed a motion for reconsideration, now raising the defenses of quasi-judicial immunity, witness immunity, lack of duty, and statute of limitations. The superior court granted the State's motion for reconsideration and granted the State's motion for summary judgment. The superior court determined no duty

6

existed that required the State to act on Ford's behalf to assure his sentence was lawful. The superior court also found that Ford's claims were barred by quasi-judicial immunity. Finally, the superior court rejected Ford's false imprisonment claim, finding that the State did not have the authority to release Ford until it received an order from the sentencing court. The superior court did not reach the issues of witness immunity or statute of limitations. The court entered a written order, from which Ford appeals.

II

A

Ford argues the State's immunity argument was not timely raised and was not properly before the superior court on reconsideration, asserting we may not consider the issue. We disagree.

"In the context of summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration." Chen v. State, 86 Wn. App. 183, 192, 937 P.2d 612 (1997). Motions for reconsideration and the taking of additional evidence are within the discretion of the superior court. Id. The State's presentation of a new argument in its reconsideration motion, instead of in a new summary judgment motion, failed to give Ford the proper amount of time under CR 56 to respond to the new arguments. But Ford suffered no prejudice. Ford was on notice of the quasi-judicial immunity defense, both from the State's answer to Ford's amended complaint and its 2018 motion to dismiss. Additionally, Ford had the opportunity to respond to the issues in his response to the motion for reconsideration and does not show that the more limited time to respond affected

his ability to meet the merits of the state's contentions. The motion did not depend on new evidence or contentions. Because Ford was not prejudiced, the superior court did not abuse its discretion in considering the additional argument and we may consider the issue on appeal.

B

Immunity is a question of law we review de novo. Hertog, ex rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Quasi-judicial immunity "attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions." Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 99, 829 P.2d 746 (1992). Therefore, quasi-judicial immunity protects those who perform judicial-like functions to ensure they can do so without fear of personal consequences. See id.

These principles have been applied to protect parole officers and guardians ad litem from suits stemming from their recommendations to courts. In Taggart v. State, the court held that parole officers are entitled to quasi-judicial immunity "for those functions they perform that are an integral part of a judicial or quasi-judicial proceeding." 118 Wn.2d 195, 213, 822 P.2d 243 (1992). The court explained that quasi-judicial immunity was appropriate "when a parole officer performs functions such as . . . providing the [Parole] Board with a report to assist the Board in determining whether to grant parole." Id. Likewise, in Barr v. Day, 124 Wn.2d 318, 319, 879 P.2d 912 (1994), the court held that guardians ad litem in guardianship proceedings involving court approval of settlements of civil claims of incompetent

8

individuals act as an arm of the court, and are, therefore, entitled to quasi-judicial immunity from civil liability. Id. at 3-32.

Under Creelman v. Svenning, 67 Wn.2d 882, 885, 410 P.2d 606 (1966), a city, county, or state which employs an officer also enjoys the quasi-judicial immunity of that officer for the acts of that officer. Cf. Guffey v. State, 103 Wn.2d 144, 152-53, 690 P.2d 1163 (1984) (municipality enjoys the qualified immunity of its police officers), overruled on other grounds by Savage v. State, 127 Wn.2d 434, 899 P.2d 1270 (1995); see also Dutton v. Wash. Physicians Health Program, 87 Wn. App. 614, 619, 943 P.2d 298 (1997) (the medical disciplinary board's quasi-judicial immunity extended to the State and its agency).

Patton was ordered by the court to prepare a presentence report to assist the court in determining the appropriate sentence for Ford. RCW 9.94A.500 (authorizing the superior court to order the department of corrections to complete a risk assessment for sentencing purposes). A community correction officer acts on behalf of the court when providing information through a presentence report. State v. Sanchez, 146 Wn.2d 339, 354, 46 P.3d 774 (2002) (quoting CrR 7.1(b) (presentence report may contain "such other information *as may be required by the court*")). Any alleged negligence by Patton in drafting the presentence report is shielded from liability because his actions were conducted as an arm of the court. Likewise, the State is shielded because its contribution to Patton's conduct occurred pursuant to its mandate from the court.

III

Ford characterizes his claim not as challenging the preparation of the presence report, but rather as challenging "the State's failure after learning of their existence *to obtain the missing California documents* which would verify the report's conclusions, followed by a complete systemic failure *to calendar and verify receipt* of the dispositive documents," and thereafter its failure "*to apprise the prosecutorial and/or judicial authorities of the evidence* that demonstrated that [Ford] was being wrongfully imprisoned on the basis of a facially incorrect judgment and sentence." (Emphasis added.) Ford maintains the State neglected to obtain the missing California documents and alert the authorities to their significance "even when presented with questions about the California offenses at the 2005 resentencing."

Based on these failures, Ford asserts claims for negligence, false imprisonment, negligent infliction of emotional distress, and outrage. The threshold determination in a negligence action is whether a duty of care is owed by the defendant to the plaintiff. Taylor v. Stevens County, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). Whether a duty exists is a question of law. Osborn v. Mason County., 157 Wn.2d 18, 23, 134 P.3d 197 (2006). "To decide if the law imposes a duty of care, and to determine the duty's measure and scope, we weigh 'considerations of logic, common sense, justice, policy, and precedent.' " Affil. FM Ins. Co. v. LTK Consulting Servs., Inc., 170 Wn.2d 442, 449-50, 243 P.3d 521 (2010) (quoting Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001) (internal quotation marks omitted)). Ford does not show that the

department had a duty sounding in tort to pursue the California documents to uncover a possible error in his judgment and sentence.

Ford relies on the court's statement in Beltran-Serrano v. City of Tacoma that "[a]t common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." 193 Wn.2d 537, 550, 442 P.3d 608 (2019). The court said this in the context of the public duty doctrine, explaining that Washington had not relied on the public duty doctrine alone to hold that a governmental entity did not owe a common law duty, such as a claim for common law negligence. Id. at 549-50. The court looked to Washington decisions allowing claims against law enforcement officers to show that the public duty doctrine did not bar the plaintiff's claim in that case, where a police officer had negligently caused physical injury during a noncriminal stop. Id. at 551-52. Distinguishing a common law claim from statutory duties, the court explained "the specific tort duty owed to Beltran-Serrano arises from [the officer's] affirmative interaction with him." Id. at 552.

The analysis under discussion in Beltran-Serrano of why the public duty doctrine did not bar the plaintiff's common law negligence claim is a separate analysis from whether there is a duty of care supporting a common law negligence claim. In Beltran-Serrano, the officer shot Beltran-Serrano first with a "stun gun" and then with a firearm, so the common law negligence claim lay in the officer's actions injuring Beltran-Serrano during the interaction. Id. at 541, 549. Ford lacks the kind of "interaction" that supported a tort duty of care in Beltran-Serrano. The department did not undertake any actions toward the correctness of the judgment

and sentence other than its role, for which it has immunity, in the preparation of the presentence report.

Washington law does not place on the department the responsibility to protect criminal defendants from errors in judicial proceedings. The only applicable statutory provision is the department's preparation of the presentence report under RCW 9.94A.500. As explained above, the State has quasi-judicial immunity for the preparation of the report. Although the context was different, the reasoning of Mock v. State, 200 Wn. App. 667, 403 P.3d 102 (2017), is authoritative. In Mock, when a court was sentencing an offender on supervised release for a new crime, a community corrections officer had no duty to inform the court of the officer's knowledge and concerns. Id. at 678-79. The court explained that while decisional law referred to community corrections officers needing to provide accurate information to courts, those references applied within the context of the recognized "take charge" duty based on the *Restatement (Second) of Torts* § 319 (Am. Law Inst. 1965). Mock, 200 Wn. App. at 676. The court rejected the existence of a "free-floating" tort duty by community corrections officers to seek out sentencing courts to convey what they knew. Id. at 677-78. Here also, Ford does not point to a statute or tort theory suggesting a duty by the department to research a defendant's criminal history for possible errors affecting a sentence.

The error affecting Ford's 1999 and 2005 sentences could be learned only by discovering the California records identifying the 1986 conviction as a misdemeanor. For purposes of applying the 1-year bar on collateral attack in RCW 10.73.090 to determine whether a judgment and sentence is valid on its face,

Washington permits review of a collateral court document "of unquestionable authenticity that has a direct bearing on the trial court's authority to impose a life sentence." In re Pers. Restraint of Carrier, 173 Wn.2d 791, 800, 272 P.3d 209 (2012). But other than to the extent it prepared the presentence report, for which it has immunity, the department had no affirmative duty in tort to discover the California documents that identified the 1986 conviction as a misdemeanor. This remains true even though the State knew at the original 1999 sentencing that it did not have the 1986 certified judgment and sentence.

While Ford emphasizes the superior court's conclusion that the 2005 judgment and sentence was facially invalid, that is not the same as saying it was without legal effect. When criminal judgments have been found facially invalid because they imposed sentences exceeding the court's statutory authority, the courts have imposed remedies such as resentencing or remand to strike unauthorized terms. See In re Personal Restraint of Coats, 173 Wn.2d 123, 135-36 267 P.3d 324 (2011). Such relief implies that a criminal judgment remains legally effective, notwithstanding an instance of facial invalidity permitting a collateral attack as an exception to the 1-year bar under RCW 10.73.090.

There is a limited statutory procedure through which the department may seek appellate review if it believes there is an error in a criminal judgment and sentence. RCW 9.94A.585(7). Review is "limited to errors of law" and the appeal must be filed no later than 90 days after the department "has actual knowledge of [the] terms of the sentence." Id. But the department's ability to flag a potential

13

error in a criminal judgment does not imply a duty in tort to search out evidence that might reveal one.

The Supreme Court has signaled that executive branch agencies may not unilaterally correct perceived errors in criminal judgments, but must abide the issuance of such corrections from the courts. In re Pers. Restraint of Gronquist, 192 Wn.2d 309, 313-14, 429 P.3d 804 (2018); State v. Broadaway, 133 Wn.2d 118, 135-36, 942 P.2d 363 (1997); In re Pers. Restraint of Chapman, 105 Wn.2d 211, 216, 713 P.2d 106 (1986). This court has been more emphatic, holding the department may not correct criminal judgments it believes do not conform to statutory requirements. Dress v. Dep't of Corr., 168 Wn. App. 319, 328, 279 P.3d 875 (2012); In re Pers. Restraint of Davis, 67 Wn. App. 1, 9-10, 834 P.2d 92 (1992). The courts have hewn to this principle in contexts where the department sought to impose terms of sentences it believed were mandated by statute, but had not been reduced to judgment. Chapman concerned a dispute about whether the sentence should run consecutively (as the executive branch agency contended), or concurrently (as the judgment directed), and the Supreme Court saw in the effort to impose a sentence not authorized by the court a usurpation of the judicial power. 105 Wn.2d at 216. In Dress, we affirmed an extraordinary writ of mandamus ordering the immediate release of an individual the department sought to detain for 11 months longer than the court's judgment had authorized. 168 Wn. App. at 324, 339.

Ford points to false imprisonment cases, Kellogg v. State, 94 Wn.2d 851, 854, 621 P.2d 133 (1980) and Stalter v. State, 151 Wn.2d 148, 157, 86 P.3d 1159

14

(2004), which describe an avenue for relief when a jailer is presented with information calling into doubt the propriety of incarcerating an individual. These cases are distinguishable because they concern situations in which information cast doubt on whether jailers had justification to continue detaining a person, such as because of misidentification. Stalter, 151 Wn.2d at 158. These cases did not involve incarceration pursuant to a legally effective judgment. Until resentencing in March 2017, Ford remained incarcerated under a still effective judgment. Ford does not cite a case in which such a fact pattern was held to support a claim for false imprisonment. Generally, if the department follows the plain language of a judgment, and that judgment was enacted pursuant to a valid legal process and court sentence, then the department has not falsely imprisoned an offender. Blick v. State, 182 Wn. App. 24, 33, 328 P.3d 952 (2014). This depends also on good faith. Stephens v. State, 186 Wn. App. 553, 560, 345 P.3d 870 (2015). The department had a duty to release Ford in a reasonable period after it received the amended judgment and sentence, Tufte v. City of Tacoma, 71 Wn.2d 866, 871-72, 431 P.2d 183 (1967), and it did so.[2]

Last, Ford points to language indicating legislative intent for certain 2008 amendments to the Sentencing Reform Act of 1981, chapter 9.94A RCW. Ford's

---

[2] Ford additionally argues he has "alleged sufficient facts about his unlawful incarceration to create jury questions as to whether the State was reckless or even intentional in its persistence in incarcerating him after it knew or should have known that such imprisonment was unlawful" in relation to his negligent infliction of emotional distress and outrage claims. Ford provides no argument or explanation of this assigned error in his brief. We do not address this assignment of error. RAP 10.3(a)(6) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record).

argument is not based on the substantive provisions of RCW 9.94A.500, but on statements of legislative intent accompanying 2008 amendments to that section. The extent of the statutory provision relevant here is that the court may, but in this case was not required to, request the department to prepare a presentence report. RCW 9.94A.500. The statute goes no farther. This cannot support a duty of care by the State to discover an error in the judgment and sentence the court later imposes by continuing to research the possible existence of documents that might show an error.

Affirmed.

_Birk, J._

WE CONCUR:

_Coburn, J._    _Brennan, J._