FILED
COURT OF APPEALS
DIVISION II

2013 NOV 13 AM 11: 14

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, successor in interest to VENTURE BANK,<br><br>                   Appellant,<br><br>v.<br><br>BRUCE A. REIKOW and SANDRA J. REIKOW, individually and the marital community comprised thereof; KARL R. ZETTERBERG and JANE ZETTERBERG, individually and the marital community comprised thereof,<br><br>                   Respondents. | No. 43181-5-II<br><br><br>PUBLISHED OPINION |

BJORGEN, J. — First-Citizens Bank & Trust Company sued Bruce and Sandra Reikow for a deficiency judgment following a trustee's sale of real property securing a commercial loan, then in default, which the Reikows had guaranteed. The trial court granted partial summary judgment to First-Citizens as to the amount of the debt and the Reikows' liability for any deficiency, but ultimately dismissed the complaint after holding an evidentiary hearing and finding that the fair value of the property exceeded the amount owing on the loan.

First-Citizens appeals, alleging that the trial court erred in denying it summary judgment as to all issues, and, in the alternative, that the court abused its discretion in determining the fair value of the foreclosed property. Because the trial court properly declined to determine the amount of deficiency on summary judgment and because substantial evidence in the record supports the trial court's fair value determination, we affirm.

## FACTS

### I. THE COMMERCIAL LOAN AND ASSOCIATED GUARANTIES

Venture Bank made a $6,746,803.53 commercial construction loan to NBP LLC, an entity in which the Reikows had a 50 percent interest and in which Bruce Reikow served as a managing member. To secure the promissory note, NBP granted the bank a deed of trust for the property under development, known as Narrows Business Park.

The Reikows also executed personal guaranties for the entire amount of the loan. These guaranties include language by which the Reikows purported to waive, among other things,[1]

> any and all rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, . . . or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

Clerk's Papers (CP) at 42, 45. The guaranties also required the Reikows to pay the lender's costs and legal fees incurred in enforcing the loan obligation.

### II. NONJUDICIAL FORECLOSURE OF DEED OF TRUST

The Washington State Department of Financial Institutions subsequently closed Venture Bank and placed it in receivership. The receiver sold all of the failed bank's assets, including the note and associated guaranties at issue here, to First-Citizens. After NBP began missing scheduled loan payments, First-Citizens declared the promissory note in default and initiated nonjudicial foreclosure of the deed of trust under chapter 61.24 RCW.

---

[1] The document states, for example, that "[e]xcept as prohibited by applicable law, Guarantor waives any right to require Lender . . . to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever."

2

First-Citizens submitted the sole bid at the trustee's sale, purchasing the property for $5,215,000.00 on July 9, 2010. At the time of the sale, the amount due on the note, including interest, foreclosure costs, charges, and fees stood at $7,168,710.74.

### III. FIRST-CITIZENS' LAWSUIT AGAINST REIKOWS FOR DEFICIENCY

Following the trustee's sale, First-Citizens sued the Reikows personally for a deficiency judgment

> in an amount to be proven at trial, representing the outstanding balance on the Note . . . less the fair value of the Property sold at the trustee's sale or the price paid at the trustee's sale . . . plus [costs and attorney fees].

CP at 4. The Reikows answered the complaint, admitting to the amount due on the promissory note, to NBP's default, and to their guarantee of the loan, but denying any remaining liability and requesting judicial determination of the fair value of the property sold.

First-Citizens then moved for summary judgment. In its motion, First-Citizens argued that the Reikows had waived any right to request a fair value hearing by virtue of the guaranties' waiver provisions, and therefore, the deficiency amounted to the difference between the outstanding debt and the sale price as a matter of law.

Bruce Reikow filed a declaration in opposition to the summary judgment motion, attaching an Internal Revenue Service (IRS) form he had received from First-Citizens concerning the trustee's sale. The preparer, a First-Citizens employee, had listed the "fair market value" of the property as $7,820,000 on the form. CP at 150. Reikow also attached documents from the Pierce County Assessor's office showing the 2010 "assessed value" of the property as $7,521,000. CP at 154-56. In its reply, First-Citizens submitted a professional appraisal dated December 30, 2009, giving a "Prospective Market Value at Stabilization" of $7,820,000 and an "As-Is Market Value" of $6,630,000. CP at 207-09.

3

At the hearing on First-Citizen's summary judgment motion, the Reikows argued pro se[2] that the court should hold First-Citizens to its statement of fair market value on the IRS form. First-Citizens maintained that the Reikows had waived any right to dispute the amount of the deficiency and that the court should not hold a fair value hearing or consider the IRS form. The court entered an order granting partial summary judgment to First-Citizens as to the amount of the debt and the Reikows' liability for any deficiency, but decided to hold a hearing to determine the fair value of the property.

At the fair value hearing, First-Citizens presented the testimony of one of the professionals who had prepared the December 2009 appraisal. One of First-Citizens' employees also testified to the bank's opinion that the "estimated as-is market value" of the property shortly before the trustee's sale stood at $6,370,000. Verbatim Report of Proceedings (VRP) (Feb. 21, 2012) at 41.

Bruce Reikow testified on the Reikows' behalf, describing the difficulties he had obtaining and retaining tenants during the nonjudicial foreclosure, which he attributed in part to the conduct of First-Citizens. Reikow also discussed receiving the IRS form from First-Citizens, stating his belief that the amount on the form was correct. The court admitted the form into evidence.

The court found the fair value of the property as of the trustee's sale to have been $7,820,000.00, a sum exceeding the amount due on the note by $651,289.26, and therefore dismissed the complaint. Based on the fee-shifting provision in the guaranties, the court entered

---

[2] The Reikows' counsel filed a notice of intent to withdraw on September 13, 2011.

judgment in favor of the Reikows for reasonable costs and attorney fees incurred in defending against First-Citizens' deficiency suit. First-Citizens timely appeals.

## ANALYSIS

First-Citizens' claim that the trial court erred in holding a fair value hearing, if correct, would dispose of the question of whether the court's value determination amounted to an abuse of discretion. We therefore first address the trial court's grant of partial summary judgment, then consider the trial court's finding as to the fair value of the foreclosed property.

## I. TRIAL COURT'S DECISION TO HOLD A FAIR VALUE HEARING

We review a trial court's denial of summary judgment de novo. *Walston v. Boeing Co.*, 173 Wn. App. 271, 279, 294 P.3d 759, *review granted*, 177 Wn.2d 1019, 304 P.3d 115 (2013) (citing *Baker v. Schatz*, 80 Wn. App. 775, 782, 912 P.2d 501 (1996)).

> Summary judgment should only be granted if after considering all the pleadings, affidavits, depositions or admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said (1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment [sic] as a matter of law.

*Baker*, 80 Wn. App. at 782.

Washington statutes allow deficiency judgments against a borrower or guarantor following nonjudicial foreclosure on a deed of trust securing a commercial loan. RCW 61.24.100(3). In actions against a guarantor for a deficiency,

> the guarantor may request the court or other appropriate adjudicator to determine, or the court or other appropriate adjudicator may in its discretion determine, the fair value of the property sold at the sale and *the deficiency judgment against the guarantor shall be for an amount equal to the sum of the total amount owed to the beneficiary by the guarantor as of the date of the trustee's sale, less the fair value of the property sold at the trustee's sale or the sale price paid at the trustee's*

*sale, whichever is greater*, plus [interest, costs, expenses, and fees, to the extent provided for in the guaranty or related contract].

RCW 61.24.100(5) (emphasis added). The plain language of the statute thus limits the deficiency judgment to the difference between the outstanding loan balance and the "fair value" of the collateral, plus collection-related costs explicitly allowed by contract.[3] As First-Citizens properly concedes, the statute also expressly grants courts discretion to determine the fair value even when the guarantor does not request such a determination.

First-Citizens devotes considerable argument to its claim that the Reikows waived any right they may have had to request a judicial determination of fair value. Nowhere, however, does First-Citizens explain how this questionable proposition,[4] were it established, would entitle

---

[3] Professor Marjorie Rombauer articulates the rationale behind this rule as follows:

> A nonjudicial foreclosure sale (indeed, any foreclosure sale) always carries a certain danger of a windfall to the beneficiary. When the debt owed the beneficiary is large, and/or when a secondary lienor is a taxing agency also owed a significant sum, junior lienors and unrelated bidders are much less likely to be able to bid a sufficient amount to prevail at the sale, even when there is equity in the property. A foreclosing beneficiary could choose to bid a large amount, but less than its loan balance. Should another bidder bid higher, the beneficiary can protect its position by raising its bid to the amount owed it with no actual outlay. Should the beneficiary prevail on its "lowball" bid, arguably she will benefit in two ways. First, as the prevailing bidder—she will have obtained a windfall-ownership of the property at less than its fair market value. Second, as the foreclosing beneficiary—she will have received less than the full amount owed her and can thus proceed to foreclosure on the other real property collateral.

27 WASHINGTON PRACTICE: CREDITORS' REMEDIES — DEBTORS' RELIEF, § 3.37, at 177. In the context of commercial loans, a foreclosing lender could also, absent this rule, gain such a windfall by obtaining a deficiency judgment against the debtor or a guarantor.

[4] We note that, under Washington law, "a guaranty agreement should receive a fair and reasonable interpretation reflecting the purpose of the agreement and *the right of the guarantor not to have his obligation enlarged." Old Nat'l Bank of Wash. v. Seattle Smashers Corp.*, 36 Wn. App. 688, 691, 676 P.2d 1034 (1984) (emphasis added). Our Supreme Court has shown great reluctance to allow waiver of the statutory requirements governing nonjudicial foreclosure. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 106-07, 297 P.3d 677 (2013) (stating that "'[w]e will not allow waiver of [chapter 61.24 RCW's] protections lightly'" and citing

No. 43181-5-II

the bank to a larger deficiency judgment than the statute allows. First-Citizens merely asserts that "[t]he only reason there was a fair value hearing in this case is because the Reikows requested one." Br. of Appellant at 15.

The record does not support First-Citizens' assertion. To begin with, First-Citizens' complaint itself calls for a fair value hearing, although the Reikows also requested a judicial determination of fair value in their answer to the complaint. At the hearing on First-Citizens' motion for summary judgment, however, the Reikows, then proceeding pro se, did not mention their prior request for a fair value determination. Instead, they argued that the court should prohibit First-Citizens from asserting a value lower than that stated in the IRS form that the bank had prepared.

The court on its own initiative expressed the concern that, having already foreclosed on the collateral and obtained a settlement from a different guarantor,[5] First-Citizens might be "double-dipping," particularly as it bid "some hundreds of thousands less than the bank's appraisal" at the trustee's sale.[6] VRP (Jan. 27, 2012) at 4-6. Indeed, the record indicates that the

cases) (quoting *Bain v. Metro. Mortg. Grp.*, 175 Wn.2d 83, 108, 285 P.3d 34 (2012)). A valid waiver, furthermore, requires "intentional abandonment or relinquishment of a known right, and intent to waive must be shown by unequivocal acts or conduct which are inconsistent with any intention other than to waive." *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 143 Wn. App. 345, 361, 177 P.3d 755 (2008), *appeal after remand*, 160 Wn. App. 728 (2011). Thus, were we to find the issue relevant to this dispute, the broad, boilerplate waiver in the guaranties' fine print could hardly defeat the explicit and specific provisions of RCW 61.24.100(5), which plainly aim to protect guarantors from having their obligations enlarged.

[5] First-Citizens' complaint also named Karl and Jane Zetterberg, the Reikows' business partners, who had also guaranteed the loan at issue here. First-Citizens voluntarily dismissed the Zetterbergs, apparently as part of a package settlement involving multiple claims. Neither party alleges that the dismissal has any bearing on this dispute.

[6] In fact, First-Citizens bid $1,415,000 less at the trustee's sale than the "As-Is Fair Market Value" given in the bank's professional appraisal, and $1,145,000 less than its own "estimated as-is market value." CP at 18, 207-09; VRP (Feb.21, 2012) at 41.

7

trial court set the fair value hearing sua sponte: "I'm going to deny the motion for a deficiency judgment. *I think what we need to do* is set a hearing for this." VRP (Jan. 27, 2012) at 12 (emphasis added). First-Citizens concedes the court had the power to order such a hearing sua sponte. Reply Br. of Appellant at 14-15 (arguing that enforcing the waiver provision would not violate public policy because "the trial court could still *sua sponte* order a fair value hearing"). VRP (Jan. 27, 2012) at 12. Even if the Reikows, *arguendo*, had waived their right to request a fair value hearing, the court retained its authority to hold one.

The statute limits a deficiency judgment following nonjudicial foreclosure based on the fair value of the foreclosed collateral and gives courts discretion to determine that value. Cases where the fair value might exceed the price obtained at the trustee's sale plainly call for such judicial determination. Here, First-Citizens submitted the only bid at the trustee's sale, a bid over $1,000,000 less than its own valuation of the property. The trial court had before it the county assessor's valuation and a tax document prepared by First-Citizens itself, both giving values substantially higher than that bid and well in excess of the outstanding loan balance. First-Citizens had, furthermore, presented two widely divergent values. Thus, reasonable minds plainly differed as to the fair value of the property, a question of fact dispositive of the entire action.

Under these circumstances First-Citizens' argument, that no issue of material fact remained and that reasonable persons could have concluded only that the law entitled First-Citizens to a specific sum of money, has no merit. We hold that the trial court properly denied summary judgment as to the amount of the deficiency and thus did not err in holding a fair value hearing.

## II. THE TRIAL COURT'S FAIR VALUE DETERMINATION

In an action for a deficiency judgment following a nonjudicial foreclosure, the plaintiff bears the burden of establishing a deficiency between the debt and the value of the collateral sold. *See Sec. State Bank v. Burk*, 100 Wn. App. 94, 101, 995 P.2d 1272 (2000) (interpreting an analogous provision in the Uniform Commercial Code). The statute at issue here defines "fair value" as

> the value of the property encumbered by a deed of trust that is sold pursuant to a trustee's sale. This value shall be determined by the court or other appropriate adjudicator by reference to the most probable price, as of the date of the trustee's sale, which would be paid in cash or other immediately available funds, after deduction of prior liens and encumbrances with interest to the date of the trustee's sale, for which the property would sell on such date after reasonable exposure in the market under conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self-interest, and assuming that neither is under duress.

RCW 61.24.005(6).

Because this provision and RCW 61.24.100(5) by their terms grant courts discretion to determine fair value, we review such determinations under the abuse-of-discretion standard. *See, e.g., In re Guardianship of Matthews*, 156 Wn. App. 201, 214, 232 P.3d 1140 (2010) (noting that where a "statute explicitly grants the superior court discretion," we review for abuse of discretion). Under this deferential standard, an abuse of discretion occurs when a decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P. 3d 115 (2006) (quoting *Assoc. Mortg. Investors v. GP Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)). A discretionary decision rests on untenable grounds or is based on untenable reasons if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts,

9

adopts a view that no reasonable person would take. *Mayer*, 156 Wn.2d at 684. We defer to the trial court regarding witness credibility and conflicting testimony, viewing the evidence in the light most favorable to the prevailing party: here, the Reikows. *City of Walla Walla v. $401,333.44*, 164 Wn. App. 236, 256, 262 P.3d 1239 (2011).

First-Citizens presented expert testimony concerning the professional appraisal it had commissioned. The appraiser explained that the difference between the two values given, the "as-is fair market value" of $6,630,000 and the "prospective market value at stabilization" of $7,820,000, resulted largely from the fact that he calculated the latter figure assuming the property were fully leased out, but based the former on the actual tenancy status at the time of the appraisal. VRP (Feb. 21, 2012) at 23-25.

"Fair value" presumes "reasonable exposure in the market under conditions requisite to a fair sale," not a price based on duress. RCW 61.24.005(6). Bruce Reikow testified that his inability to obtain tenants for some of the vacant portions of the property resulted from the actions of First-Citizens itself: the bank's refusal to cooperate with NBP and the prospective tenants' uncertainty about the foreclosure process. First-Citizens did not present any contrary evidence.

The Reikows also presented a document prepared and submitted to the IRS by First-Citizens itself, admitting that the fair market value of the property at issue exceeded the amount of the debt. First-Citizens presented opinion testimony that someone erroneously entered that figure on the IRS form, but the witness admitted that he did not know who prepared the form or whether First-Citizens had issued a correction. The witness also admitted that, had a corrected

form issued, the Reikows would have received a copy. Bruce Reikow disputed the claim of mistake and testified that he had never received a correction.

Thus, the uncontroverted evidence showed that First-Citizens' appraisers based the lower valuation on the then-current reduced tenancy status, which resulted in part from the foreclosure process itself. The trial court could reasonably have concluded that this assumption did not comport with the statutory requirement of "reasonable exposure in the market under conditions requisite to a fair sale," but instead reflected a seller under "duress." RCW 61.24.005(6). Further, the resolution of the conflicting testimony concerning First Citizens' apparent admission on the IRS form lies in the province of the trial court. We hold that the trial court's fair value determination was not an abuse of discretion.

First-Citizens points out that the trial court did not discuss the unpaid taxes owed on the property, which the statute requires the court to deduct in determining fair value. Because the value accepted by the court exceeded the outstanding debt by over $650,000.00, and the unpaid taxes amounted to only $133,358.14, the court had no reason to explicitly perform this calculation. The evidence and the findings of fact thus support the trial court's conclusion that the Reikows had no remaining liability to First-Citizens.

First-Citizens' claim that the trial court abused its discretion fails. The evidence supports the trial court's determination of the fair value of the property as of the trustee's sale, a sum exceeding the outstanding debt plus the unpaid taxes. The trial court's conclusions of law properly followed from its findings and required dismissal of the suit. For these reasons, we affirm.

11

No. 43181-5-II

## ATTORNEY FEES

Washington law requires courts to apply one-way fee-shifting provisions bilaterally. RCW 4.84.330. The guaranties at issue here contain such one-way fee-shifting provisions. Having obtained dismissal with prejudice of First-Citizens' lawsuit against them, the Reikows plainly prevailed below. Thus, the trial court properly awarded the Reikows their costs, as well as the attorney fees they incurred before proceeding pro se.

Both parties request fees on appeal. When a contract provides for a fee award in the trial court, the party prevailing before us may seek reasonable costs and attorney fees incurred on appeal. RAP 18.1; *Reeves v. McClain*, 56 Wn. App. 301, 311, 783 P.2d 606 (1989). The Reikows prevail here and have complied with applicable procedural requirements. We therefore award the Reikows the reasonable costs and attorney fees they incurred in this appeal and deny First-Citizens' fee request.

Affirmed.

BJORGEN, J.

We concur:

HUNT, P.J.

PENOYAR, J.

12