FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TOM MOYER THEATRES, an Oregon partnership, | No. 45433-5-II |
| Respondent, | |
| v. | |
| MICHAEL J. WALKER, DEBORAH A. WRAY, and KRISTIN D. STUMP, Co-Trustees of the Amended and Restated Walker Family Trust dated August 18, 2001; and GREENWAY TERRACE, LLC, a Washington limited liability company, | UNPUBLISHED OPINION |
| Appellants. | |

JOHANSON, C.J. — Greenway Terrace LLC and the Amended and Restated Walker Family Trust (the Trust) appeal the trial court's order of specific performance allowing Tom Moyer Theatres (TMT) to relocate utility lines onto Greenway's property. Greenway's primary argument is that TMT did not prove by clear and unequivocal evidence that TMT had the right to move the utilities onto Greenway's property under a 2001 purchase and sale agreement. We conclude that TMT failed to meet its burden to demonstrate that it had a clear and unequivocal contractual right to relocate the utility lines onto Greenway's property. We reverse the trial court's orders of

specific performance and for attorney fees in TMT's favor and hold that TMT is not entitled to specific performance. We also hold that, as the prevailing party, Greenway is entitled to reasonable attorney fees under the Agreement. Accordingly, we remand to the trial court for further proceedings consistent with this opinion.

## FACTS

In 2001, the Trust sold approximately one-third of a parcel of land to TMT Development Co., Inc. TMT Development Co. assigned its interest in the land that it bought to TMT.[1] The Trust retained its interest in the other two-thirds of the parcel and later conveyed that land to Greenway.

This appeal is centered on the language of the purchase and sale agreement and an addendum to that agreement that TMT's and Greenway's predecessors-in-interest executed in 2001 (the Agreement). The Agreement included an easement permitting Greenway to enter TMT's property to make repairs and perform maintenance on utility lines under TMT's property that serve a mobile home park on Greenway's property. The disagreement in this case is over the language of the easement's relocation provision which states, in relevant part, that

> [TMT] shall have the right to relocate or alter utilities which are located in the 6.25 acres after closing, but in no event shall such relocation or alteration interrupt [Greenway's] utility service without [Greenway's] prior express written consent. The cost for such alterations or relocation shall be the responsibility of [TMT].

Ex. 2 at 10. The purpose of this easement was to "facilitate future development" of both Greenway's and TMT's parcels. Clerk's Papers (CP) at 382. The easement was also necessary

---

[1] We refer to the plaintiff-respondents as "TMT" and the defendant-appellants as "Greenway" because they were the parties-in-interest at the time that the actions that are the subject of this appeal occurred.

because at the time that the Agreement was signed, the land surrounding the parcels at issue had not yet been developed, and it was "physically impossible" to move the utility lines onto Greenway's property. 2 Report of Proceedings (RP) at 174.

Beginning in 2002, Greenway and TMT had several problems with the utilities that caused service disruptions, including a contractor who tapped into the lines, leaking utilities, and new, high-volume construction traffic across TMT's property that damaged utility lines. In 2008, because new development had occurred and to avoid future disruptions of service, TMT and Greenway began to discuss plans to move the utilities onto Greenway's property. In order to avoid incurring any costs for the relocation, Greenway asked TMT to sign a "Waterline Relocation Agreement" before it would allow TMT to move the utilities onto Greenway's property. TMT refused to sign the Waterline Relocation Agreement, claiming that it did not need Greenway's consent to move the utilities and that the original Agreement gave it the right to move the utilities onto Greenway's property. In 2009, TMT sued Greenway for specific performance of the Agreement.

At trial, Greenway moved in limine to exclude certain correspondence between the parties' attorneys and two TMT representatives, arguing that those exhibits were evidence of compromise or settlement negotiations and, therefore, inadmissible under ER 408. The trial court denied Greenway's motion, finding that the challenged exhibits were "indications of the carrying out of the contract and interpretation of the contract post-contract." 1 RP at 19.

Following a bench trial, the trial court found that Greenway "specifically requested that TMT move all of the Utilities in response to TMT's proposed plan to move the waterlines and water meter off of the TMT Property and onto the Greenway Property." CP at 382. The trial court

3

also found that Greenway and TMT "evidenced mutual agreement that leaving the Utilities on the TMT Property does not make sense and is contrary to their original intent."[2] CP at 382. Based on these findings, the court concluded that TMT had met its burden of proving by clear and unequivocal evidence its contract right to move the utilities onto Greenway's property. The trial court ordered specific performance, requiring Greenway to permit TMT to relocate the utility lines onto Greenway's property and awarded attorney fees to TMT. Greenway appeals.

ANALYSIS

I. CLEAR AND UNEQUIVOCAL EVIDENCE IS LACKING

Greenway argues that the trial court erred when it awarded specific performance because clear and unequivocal evidence does not support the trial court's conclusion that TMT had a contractual right to move the utility lines onto Greenway's property.[3] We agree with Greenway and hold that the trial court erred when it determined that TMT was entitled to specific performance because the court's findings of fact do not support its conclusion that TMT had a clear and unequivocal contractual right to relocate the utilities onto Greenway's property.

---

[2] Greenway assigns error only to findings of fact 11 and 15. Therefore, the remainder of the trial court's findings are verities on appeal and are the source of most of the background facts in this case. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013).

[3] As a threshold issue, Greenway argues that the trial court abused its discretion when it admitted exhibits 13 through 18 and exhibit 20. We conclude that even if exhibits 13 through 18 and 20 are considered, there is still insufficient evidence to establish that TMT had a clear and unequivocal contractual right to relocate the utilities onto Greenway's property. Consequently, we do not address this issue further.

A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's findings of fact for substantial evidence to support the findings and then determine whether those findings of fact support its conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014). Unchallenged findings of fact are verities on appeal. *Humphrey Indus., Ltd. v. Clay Street Assocs., LLC*, 176 Wn.2d 662, 675, 295 P.3d 231 (2013). We make all reasonable inferences from the facts in TMT's favor as the prevailing party below. *Scott's Excavating*, 176 Wn. App. at 342. We review the trial court's conclusions of law de novo. *Scott's Excavating*, 176 Wn. App. at 342.

Specific performance is appropriate where "there is a valid binding contract; [and] a party has committed or is threatening to commit a breach of its contractual duty." *Crafts v. Pitts*, 161 Wn.2d 16, 24, 162 P.3d 382 (2007). A party seeking specific performance of a contract right must prove that it has the right to the performance that it seeks by "'clear and unequivocal' evidence," leaving "'no doubt as to the terms, character, and existence of the contract.'" *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993) (quoting *Powers v. Hastings*, 93 Wn.2d 709, 717, 713, 612 P.2d 371 (1980)).

B. ANALYSIS

We are asked to determine whether TMT established that it had a clear and unequivocal contractual right under the Agreement to move certain utilities from TMT's property onto Greenway's property. Relying on the trial court's findings of fact, we conclude that no such right exists.

The trial court's findings on this point are as follows:

10. The Easement states in part: "Buyer shall have the right to relocate or alter utilities which are located in the 6.25 acres after closing but in no event shall such relocation or alteration interrupt Seller's utility service without Seller's prior express written consent."

11. Greenway specifically requested that TMT move all of the Utilities in response to TMT's proposed plan to move the waterlines and water meter off of the TMT Property and onto the Greenway Property.

12. The purpose of TMT moving the Utilities, as intended by the parties as part of the Agreement, was to facilitate future development.

13. In the years following execution of the Agreement, the purpose of future development continued to be a primary factor for both parties.

14. No location for movement of the Utilities was specified in the Agreement, however the parties intended that the new location of the Utilities would facilitate future development.

15. The parties have evidenced mutual agreement that leaving the Utilities on the TMT Property does not make sense and is contrary to their original intent.

16. The evidence, common sense, and the history of the case indicates that in every way the parties are benefitted by moving the Utilities off of the TMT property and onto the Greenway Property.

CP at 382. Based on these findings, the trial court concluded that

Plaintiff has met its burden of proving by clear and unequivocal evidence its contract right to move the Utilities off of the TMT Property and onto the Greenway Property, which right is consistent with the parties [sic] original intention to move the Utilities in a manner that would facilitate the development of each parcel of property.

CP at 383.

We examine these relevant findings in turn and as a whole, making all reasonable inferences in TMT's favor, to determine whether the trial court's findings of fact support its conclusion that TMT is entitled to an order of specific performance permitting it to move the

6

utilities onto Greenway's property.[4] Finding of fact 10 simply establishes that under the 2001 Agreement, TMT has the right to relocate the utilities. Notably, the Agreement does not give TMT the right to relocate the utilities to any specific location. The terms of the Agreement do not provide TMT with the express right to move the utilities onto Greenway's property.

Finding of fact 11 states that Greenway specifically requested that the utilities be moved onto its property. But the record shows that this request was made in 2008. And the fact that Greenway may have requested that the utilities be moved onto its property does not mean that TMT had a *contractual right* to move them onto Greenway's property. This finding is insufficient to establish the parties' intent in 2001 or TMT's claimed right to specific performance under the 2001 Agreement by clear and unequivocal evidence.

Findings 12, 13, and 14 are uncontested and simply demonstrate that relocation of the utilities was always intended to facilitate future development of the property. In addition, finding of fact 14 explicitly states that the Agreement does not specify a location to which the utilities may be moved. While these findings suggest that the parties should consider relocating the utilities

---

[4] As a threshold matter, TMT argues that Greenway should be precluded from assigning error to the trial court's findings of fact 11 and 15 and conclusions of law 1 and 2 because during a summary judgment hearing Greenway argued that "I think Greenway wants [the utilities] moved off of TMT's property." RP (June 7, 2013) at 20. TMT argues that Greenway cannot now assert a contrary position on appeal. However, TMT's argument fails because Greenway argued in the trial court, and here on appeal, that TMT does not have a specific right under the Agreement to relocate the utilities onto Greenway's property, not simply that Greenway agrees the utilities should be moved off TMT's property. Whether the Agreement gives TMT the specific right to relocate the utilities *onto Greenway's property* is a separate question from whether TMT and Greenway could agree between themselves on a plan to relocate the utilities off of TMT's property. Greenway has not asserted a contrary position on appeal.

when planning future development, they do not support the conclusion that TMT has a clear and unequivocal contractual right to move the utilities *onto Greenway's property.*

Finding of fact 15 is equally unhelpful. It states, "The parties have evidenced mutual agreement that leaving the Utilities on the TMT Property does not make sense and is contrary to their original intent." CP at 382. Again, this finding falls short of what is needed to clearly and unequivocally define TMT's right to relocate the utilities onto Greenway's property under the 2001 Agreement. This finding's mention of the parties' "original intent" acknowledges finding of fact 14, which states that the Agreement did not specify where TMT was permitted to relocate the utilities but that future flexibility in development was the goal of the relocation provision. The issue here, however, is not what option would be the most flexible or what plan would be the most reasonable or make the most sense today. Instead, the issue is whether the 2001 Agreement provided TMT with a clear and unequivocal right to relocate utilities *onto Greenway's property.*

In addition, the evidence of "mutual agreement that leaving the Utilities on the TMT Property does not make sense," CP at 382, comes from the parties' discussions and proposals to relocate the utilities that began in 2008 and continued until this suit was filed. Admittedly, Greenway may have agreed in 2008 and thereafter that moving the utilities off of TMT's property makes the most sense, but this subsequent agreement does not mean that the language of the 2001 Agreement gave TMT the right to move the utilities onto Greenway's property over Greenway's objection.

Similarly, finding of fact 16 fails to support the trial court's conclusion. The trial court found that "[t]he evidence, common sense, and the history of the case indicates that in every way the parties are benefitted by moving the Utilities off of the TMT Property and onto the Greenway

Property." CP at 382. While the record may support this fact, it misses the point of this case:

TMT's suit is for specific performance of the 2001 Agreement. The issue at trial was not whether

the parties would benefit from moving the utilities off of TMT's property and that fact is not

relevant to establishing that TMT had a specific, contractual right under the 2001 Agreement.

Specific performance of the terms of the Agreement required the trial court to make

findings that the Agreement clearly and unequivocally provides for the specific remedy sought—

relocating the utilities onto Greenway's property—and that there is no doubt as to the "'terms,

character, and existence of the contract.'" *Kruse*, 121 Wn.2d at 722 (quoting *Powers*, 93 Wn.2d

at 717, 713). Here, the trial court made no findings of fact that support a conclusion that the

Agreement clearly and unequivocally gives TMT the right to relocate the utilities onto Greenway's

property. Instead, the 2001 Agreement is silent regarding where the utilities would be relocated.[5]

Because the trial court's findings do not support conclusion of law 1, an order of specific

performance was erroneous because the evidence does not clearly and unequivocally establish that

TMT had a contractual right under the Agreement to relocate the utilities onto Greenway's

property. Accordingly, we reverse the trial court's judgment ordering specific performance in

TMT's favor.

## II. ATTORNEY FEES

Greenway requests reasonable attorney fees on appeal and at trial. RAP 18.1(b). Where a

contract provides for an award of attorney fees at trial, the prevailing party may seek to recover

---

[5] Here, Greenway assigns error to findings of fact 11 and 15 and to conclusions of law 1 and 2. However, even if we assume that findings of fact 11 and 15 are supported by substantial evidence, the totality of the trial court's findings fail to support its conclusions of law 1 and 2. Accordingly, we do not address whether substantial evidence supports findings of fact 11 and 15.

reasonable attorney fees incurred on appeal. *First-Citizens Bank & Trust Co. v. Reikow*, 177 Wn. App. 787, 799, 313 P.3d 1208 (2013). The addendum to the Agreement, which explains the easement, specifically provides that "[i]f any arbitration, suit, or action is instituted to interpret or enforce the provisions of this Agreement, to rescind this Agreement, or otherwise with respect to the subject matter of this Agreement," the prevailing party "on an issue" is entitled to "reasonable" attorney fees. Ex. 2 at 11. As the prevailing party, Greenway is entitled to the reasonable attorney fees it incurred at trial and in this appeal.

Accordingly, we reverse the trial court's orders of specific performance and for attorney fees in TMT's favor, hold that Greenway is entitled to reasonable attorney fees under the Agreement, and remand this case for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

MAXA, J.

LEE, J.

10