

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| ALAN WHITE and ERICA WHITE, husband and wife, | ) ) ) | No. 71903-3-I |
| Respondents, | ) ) ) | |
| v. | ) ) ) | |
| LAKELAND HOMEOWNERS ASSOCIATION, a Washington non-profit corporation, | ) ) ) ) ) | |
| Appellant, | ) ) ) | |
| AMERICAN MANAGEMENT SERVICES NORTHWEST, LLC, a Washington Limited Liability Company, | ) ) ) ) | UNPUBLISHED OPINION |
| Defendant. | ) ) ) ) | FILED: June 1, 2015 |

VERELLEN, A.C.J. — Alan and Erika White obtained a declaratory judgment that a leasing restriction on "Single-Family Homes" contained in the declaration of a master community does not apply to condominiums. The master community homeowners association appeals, contending that the trial court improperly construed the covenant against the drafters and failed to consider extrinsic evidence. Based upon the declaration's definitions, "Single-Family Home" does not include condominiums. The

court properly granted summary judgment and ruled that the restriction did not apply to the condominium owners. Accordingly, we affirm.

FACTS

On March 26, 2012, Alan and Erika White purchased a condominium within the Carrara at Lakeland Condominiums ("Carrara"). Carrara is a subassociation of the Lakeland master community ("Lakeland") located in Auburn, Washington. Lakeland consists of 21 neighborhoods comprised of single family houses and 10 neighborhoods comprised of condominiums and town homes. All units in Carrara are condominiums. Lakeland Homeowners Association is the master association for the entire Lakeland community and is governed by a board of directors and its own bylaws, declarations, rules, and regulations. Carrara has its own homeowners association governed by a separate board of directors and its own bylaws, declarations, rules, and regulations. Pinnacle Management / American Management Services NW LLC ("Pinnacle") is the property management company for both Lakeland and Carrara.

On September 8, 2011, the Whites entered into a purchase and sale agreement for the purchase of the condominium. Before closing, the Whites received a resale certificate from Ria Blake, of Pinnacle Management, who managed the Carrara properties. The resale certificate consisted of several documents, including the declaration for Carrara and the condominium bylaws, rules, and regulations.

The Whites also reviewed the preliminary title commitment, which referred them to the Lakeland declaration recorded in 1995. The Whites reviewed the Lakeland declaration and noted a provision preventing the rental of a "Single-Family Home" within

2

the first year of purchase. The Carrara declaration, recorded 10 years after the Lakeland declaration, did not contain such a provision. Other than preventing rentals for less than 30 days and partial leases, the Carrara declaration provides, "[T]here is no restriction on the right of any Unit Owner to Lease or otherwise Rent their Unit."[1]

The Whites then asked both the seller and their real estate agent if there were any rental restrictions for the condominium they intended to purchase. The seller advised the Whites that she had lived at the Carrara condominium for six years and had never heard of any such rental restriction. The seller also told the Whites that she had contacted Ria Blake, of Pinnacle Management, who assured her that the Whites could rent out the condominium immediately after purchase. The real estate agent contacted Blake and was told the same thing.

The Whites closed the purchase on March 26, 2012. After making several thousand dollars in improvements, the Whites advised Blake that they were ready to rent out their condominium unit. Blake referred them to Cindy Swift, who handled rentals for Pinnacle. Swift processed and approved the White's rental application, and on May 1, 2012, the Whites leased out their condominium unit.

On June 5, 2012, Pinnacle notified the Whites that the lease of their condominium was in violation of section 6.10.3 of the Lakeland declaration, preventing leasing of single family homes within the first year after purchase. They were further notified that a $30 per day penalty would be imposed if the Whites did not terminate the

---

[1] Clerk's Papers (CP) at 118.

lease with their tenant.  When the Whites asked Swift about this, she told them she did not understand why a penalty was being imposed.

After unsuccessfully trying to persuade Lakeland to rescind the penalty, the Whites filed a complaint for declaratory relief on February 6, 2013.  The complaint sought a determination whether the Lakeland declaration relating to rentals within the first year of purchase applies to their condominium.  The complaint also sought damages for negligence and negligent misrepresentation in the event the court ruled that the Whites could not rent out their unit within the first year of purchase without penalty.

The Whites moved for summary judgment, and Lakeland filed a cross motion for summary judgment to dismiss the complaint and require the Whites to pay $5,060.00 in unpaid fines.  The trial court granted the Whites' motion for summary judgment, ruling that "[t]here is no restriction on Plaintiffs' ability to rent their condominium within the first year of purchase" and canceling the fines imposed by Lakeland.[2]  The court also initially granted Lakeland's motion for summary judgment in part, dismissing the Whites' claims of negligence and negligent misrepresentation.  But in a later order, the court ruled that the Whites were the prevailing party and their alternative claims became moot upon the court's ruling.  The court also vacated its initial order mistakenly awarding $24,774.98 in attorney fees to Lakeland and awarded the Whites $24,774.98 in attorney fees.

---

[2] CP at 298.

Lakeland appeals. The Whites conditionally cross appeal the dismissal of their alternative claims of negligence and negligent misrepresentation in the event that this court remands for trial.

## ANALYSIS

Lakeland contends that the trial court erred by construing the terms of the leasing restriction against the drafter and failing to consider extrinsic evidence under the "context rule" of contract interpretation. The Whites acknowledge the trial court should not have construed any ambiguity against Lakeland but assert that there are other grounds upon which to affirm the trial court. The Whites contend that based on the declaration's definitions, the restriction must be interpreted to exclude condominiums. We agree.

We will affirm a trial court's order granting summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[3] Interpretation of a restrictive convent is a question of law and the rules of contract interpretation apply.[4] While Washington courts once strictly construed covenants in favor of the free use of land, courts no longer apply this rule when the dispute is between homeowners who are jointly governed by the covenants.[5] Instead, "'[t]he court's goal is to ascertain and give effect to those purposes intended by the

---

[3] Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

[4] Wilkinson v. Chiwawa Cmtys. Ass'n, 180 Wn.2d 241, 249, 327 P.3d 614 (2014).

[5] Id. at 249-50.

5

covenants.'"[6] "Courts 'place special emphasis on arriving at an interpretation that protects the homeowners' collective interests.'"[7]

The court's primary objective in contract interpretation is determining the drafter's intent.[8] "'While interpretation of the covenant is a question of law, the drafter's intent is a question of fact.'"[9] But questions of fact may be determined as a matter of law "'where reasonable minds could reach but one conclusion.'"[10]

Washington courts follow the "objective manifestation theory" of contract interpretation, focusing on the "reasonable meaning of the contract language to determine the parties' intent."[11] The court will "'impute an intention corresponding to the reasonable meaning of the words used.'"[12] To determine the drafter's intent, courts give covenant language "'its ordinary and common use'" and will not construe a term "'so as to defeat its plain and obvious meaning.'"[13] Courts examine the language of the restrictive covenant and consider the instrument in its entirety.[14]

---

[6] Id. at 250 (alteration in original) (quoting Riss v. Angel, 131 Wn.2d 612, 623, 934 P.2d 669 (1997)).

[7] Id. (internal quotation marks omitted) (quoting Riss, 131 Wn.2d at 623-24).

[8] Id.

[9] Id. (quoting Ross v. Bennett, 148 Wn. App. 40, 49, 203 P.3d 383 (2008)).

[10] Id. (quoting Ross, 148 Wn. App. at 49-50).

[11] Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014).

[12] Hulbert v. Port of Everett, 159 Wn. App. 389, 399, 245 P.3d 779 (2011) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)).

[13] Wilkinson, 180 Wn.2d at 250 (quoting Mains Farm Homeowners Ass'n v. Worthington, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993)).

[14] Id.

"A court will not read ambiguity into a contract 'where it can reasonably be avoided.'"[15] "A contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings."[16] "'If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented.'"[17] Summary judgment on contract interpretation is proper "if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning."[18]

Here, the parties dispute the meaning of "single family home" as used in Article 6.10.3 of the Lakeland declaration, which imposes the following restriction on rentals:

> An Owner may not rent or lease a Single-Family Home in any manner whatsoever for one year after the date of closing of their purchase without the prior written approval of the Board of Directors. Provided that, this section shall not apply to Mortgagees who take title after a default by a Lot Owner.[19]

The Lakeland declaration does not define "Single-Family Home" but defines the terms "Single Family," "Home," and "condominium" as follows:

> "Single Family" shall mean and refer to a single housekeeping unit that does not include more than 4 adults.[20]

---

[15] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (internal quotation marks omitted) (quoting Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995)), review denied, 181 Wn.2d 1008 (2014).

[16] Id.

[17] Id. (internal quotation marks omitted) (quoting Martinez v. Kitsap Pub. Servs., Inc., 94 Wn. App. 935, 943, 974 P.2d 1261 (1999)).

[18] Id.

[19] CP at 93.

[20] CP at 84 (Article 1.5.22).

"Home" shall mean and refer to any structure located on a Lot, which structure is designed and intended for use and occupancy as a residence by a single family or which is intended for use in connection with such residence.[21]

"Condominium" shall mean and refer to any Living Unit created in a declaration filed pursuant to the Washington Condominium Act, RCW Ch. 64.34, or any successor statute, including without limitation such units located in duplexes, fourplexes and other multi-dwelling-unit buildings, and any building composed of such units if the context shall require.[22]

RCW 64.34.020(10) defines "condominium" as "real property, portions of which are designated for separate ownership and the remainder of which is designated for common ownership solely by the owners of these portions."

Lakeland contends that "Single-Family Home" includes condominiums and the one-year rental restriction applies to the Whites' condominium. The Whites contend that the restriction for "Single-Family Home[s]" does not include condominiums and that the Carrara declaration applies to rentals of condominiums. Section 11.14 of the Carrara declaration governs the leasing and rental of Carrara condominium units, prevents rentals for less than 30 days and partial leases, and requires written leases. It further states, "Other than as stated in this Section 11.14, there is no restriction on the right of any Unit Owner to Lease or otherwise Rent their Unit."[23]

In granting summary judgment for the Whites, the trial court ruled that Carrara was subject to the Lakeland declaration but concluded that "the restriction on an

---

[21] CP at 83 (Article 1.5.12).

[22] CP at 82 (Article 1.5.7).

[23] CP at 118 (Sect. 11.14.4).

owner's renting or leasing [a] single-family home does not apply to the plaintiffs in this instance."[24]  The court ruled:

> So, the Court notes that there are, in the declarations—that there is, in the Lakeland declaration document, a very detailed definitional section. They've defined at 1.5.12 what a home is, any structure located on a lot. They've defined what single-family means, a single housekeeping unit, but nowhere in here is a single-family home technically spelled out. So that's a question.
>
> The plain language to me suggests that the—single-family home language, if that's what you mean, could have been spelled out by Lakeland but is not there.
>
> I believe, secondly, that the ambiguity is, in this instance, to be construed against the drafter. I think it does indicate that there is a restriction on the property use there of the—of the plaintiffs. And I don't think it's appropriate. I think that Lakeland has an opportunity—had an opportunity to spell that out. They didn't. They spelled out everything else, and that makes me wonder whether or not the plaintiff should have to bear that.[25]

Lakeland is correct that in this setting any ambiguity is not construed against the drafter and in favor of the Whites. As discussed above, courts no longer apply this rule when the dispute is between homeowners who are jointly governed by the covenants.[26] But we may affirm the trial court on other grounds supported by the record.[27]

The Whites contend that the plain meaning of the term "Single-Family Home" is a house on a lot, not a condominium in a multi-dwelling-unit building, and the entirety of

---

[24] Report of Proceedings (RP) (Apr. 4, 2014) at 5.

[25] RP (Apr. 4, 2014) at 4-5.

[26] Wilkinson, 180 Wn.2d at 249-50.

[27] State v. Costich, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

the document does not demonstrate a contrary intent.[28] The Whites point to the definition of "home," which is "any structure located on a Lot . . . intended for use and occupancy as a residence by a single family,"[29] and contrast it with that of "condominium," which includes "units located in duplexes, fourplexes, and other multi-dwelling-unit buildings, and any building composed of such units."[30] Thus, a "structure" in which multiple condominiums are located, i.e., "multi-dwelling units," necessarily contains more than one unit occupied by a single family. Therefore, while condominiums in a multi-dwelling-unit building may each house a "single family," i.e., a single housekeeping unit, they do not fall within the definition of "home," which is a "structure . . . intended for use and occupancy as a residence by a single family."[31]

Additionally, the Lakeland declaration includes the term "living unit," which refers to all single family residences, specifically including both houses and condominiums:

> "Living Unit" shall mean and refer to a building or structure or any portion thereof situated in Lakeland that is designed and intended for use and occupancy as a residence by a Single Family, including attached or detached houses, Condominiums, and units within Apartment Buildings, and the appurtenant landscaping, fences, garages, driveways, or parking areas occupying any Lot on which a Living Unit is situated. If a Living Unit is constructed on [a] Lot, the definition of Living Unit shall be deemed to encompass the underlying Lot as well.[32]

---

[28] See Hearst, 154 Wn.2d at 504 (2005) ("We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent.").

[29] CP at 83.

[30] CP at 82.

[31] CP at 83.

[32] CP at 83.

Thus, if the rental restriction was intended to apply to both single family houses and condominiums, it could have referred to "living units," which expressly covers all single family dwellings, i.e., "a building or structure or any portion thereof."[33]

When viewed in context of the definitions in the Lakeland declaration, only one reasonable meaning can be ascribed to the provision restricting rentals of "Single-Family Home[s]," i.e., it does not include condominiums in multi-dwelling-unit buildings. Accordingly, that meaning necessarily reflects the parties' intent.[34] Summary judgment was therefore proper.[35]

Lakeland contends that the court should have considered extrinsic evidence to ascertain intent of the covenant. Lakeland points to the unrecorded Lakeland Community Rules and Regulations, adopted in 2009, which state, "This Declaration bars all owners from renting or leasing until one year after closing."[36]

While extrinsic evidence of the parties' intent may be examined to determine the meaning of specific words and terms used in the contract, it is "'used to illuminate what was written, not what was intended to be written.'"[37] Extrinsic evidence of a party's subjective, unilateral, or undisclosed intent regarding the meaning of a contract's terms

---

[33] See Seattle-First Nat'l Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985) ( "An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective.").

[34] GMAC, 179 Wn. App. at 135.

[35] Id.

[36] CP at 207.

[37] Wilkinson, 180 Wn.2d at 251 (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 697, 974 P.2d 836 (1999)).

is inadmissible.[38] And courts "do not consider '[e]xtrinsic evidence that would vary, contradict or modify the written word' or 'show an intention independent of the instrument.'"[39]

These regulations were not recorded as an amendment to the declaration. In this context, they cannot be enforced against the condominium owners. In Shorewood West Condominium Association v. Sadri,[40] the court held that a restriction on leasing contained in a bylaw that was not included in the declaration or as a recorded amendment to the declaration was invalid and unenforceable against condominium owners. As the court recognized,

> The property rights that owners of individual condominium units have in their units are creations of the condominium statute and are subject to the statute, the declaration, the bylaws of the condominium association, and lawful amendments of the declaration and bylaws. An association may apply a restriction on leasing, if adopted in accordance with the statute, to current owners.[41]

The court then concluded,

> [A]n association seeking to restrict a use in a bylaw must first amend its declaration if the declaration allows the use. . . . Since use restrictions must be in the declaration and any unrecorded amendments to the declaration are invalid (RCW 64.32.140), use restrictions appearing in unrecorded amendment to bylaws and not in the declaration are invalid. . . . The statute does not allow an association of apartment owners to restrict leasing in a bylaw where the declaration itself permits leasing.[42]

---

[38] Hulbert, 159 Wn. App. at 400.

[39] Wilkinson, 180 Wn.2d at 251 (alteration in original) (quoting Hollis, 137 Wn.2d at 695).

[40] 140 Wn.2d 47, 992 P.2d 1008 (2000).

[41] Id. at 54.

[42] Id. at 57.

Similarly, here, any new restriction imposed by the 2009 regulations is unenforceable against the Whites because they were not recorded amendments to the declaration.[43]

Lakeland also challenges the trial court's award of attorney fees to the Whites, contending that because both parties prevailed on cross motions for summary judgment, the Whites were not the substantially prevailing party. The record does not support this contention.

Section 8.1.2 of the Lakeland declaration provides for an award of attorney fees to the "prevailing party."[44] While Lakeland contends that it also prevailed on its summary judgment motion seeking dismissal of the negligence claims, the court's final judgment clearly states, "Plaintiff is the prevailing party. Alternative claims became moot upon this court's ruling for plaintiff."[45] The negligence claims were pleaded in the alternative in the event the court ruled that the rental restriction for single family homes applied to condominiums.[46] Because the court ruled that the restriction did not apply, the claims simply became moot; Lakeland did not "prevail" on those claims.

Lakeland further contends that the Whites' fee request was overly broad, including fees for time spent on claims against Pinnacle, which settled and was

---

[43] We are not faced with other theories that may bind consenting owners to unrecorded use restrictions.

[44] CP at 97.

[45] CP at 413.

[46] CP at 3 (complaint seeking relief as follows: "In the event this court rules that Plaintiffs cannot rent out their condominium within the first year of purchase without penalty, for damages including but not limited to all penalties assessed plus Plaintiffs' costs and attorney's fees against Lakeland Homeowner's Association and against American Management for negligence and negligent misrepresentation.").

dismissed from the suit. This contention is not supported by the record or by any citation to authority in the opening brief.

We review an award of attorney fees for an abuse of discretion.[47] According to the record, the attorney fees for the Whites totaled $34,197.47.[48] The fee request reduced this amount to $24,774.98 to account for costs, unrelated charges, fees previously awarded, and the amount paid by Pinnacle on the settlement, which was $7,500.00.[49] The trial court's order awarding fees specifically states that the court considered the contribution of Pinnacle: "Contribution by co-respondent American Management Services NW, LLC has been considered in this ruling."[50] Thus, Lakeland's assertion that the fee award did not account for Pinnacle's involvement is not supported by the record. Lakeland fails to show that the trial court's award was an abuse of discretion.[51] Additionally, its failure to cite any legal authority in the opening brief regarding overbroad fees undercuts any relief on appeal.[52]

The Whites also request their fees on appeal. When a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek

---

[47] Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013), review denied, 179 Wn.2d 1026 (2014).

[48] CP at 312.

[49] CP at 312, 325-51.

[50] CP at 413.

[51] Additionally, as the Whites noted in their motion to provide supplemental briefing, their fees were also discounted by $9,049.37 in "courtesy discounts," which were not included in the fee request. We denied the motion because the parties had the opportunity to clarify the facts at oral argument.

[52] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

reasonable attorney fees incurred on appeal.[53] We award those fees to the Whites as the prevailing party upon compliance with RAP 18.1.

Because we conclude that the Whites are not subject to the leasing restriction for single family homes, we need not reach their conditional cross appeal of the trial court's initial order dismissing its alternative claims for negligence and negligent misrepresentation.[54]

We affirm.

WE CONCUR:

_____

_____

_____

---

[53] First-Citizens Bank & Trust Co. v. Reikow, 177 Wn. App. 787, 799, 313 P.3d 1208 (2013); RAP 18.1.

[54] In any event, as noted above, the trial court clarified in a later order that the claims were not dismissed but simply became moot upon the summary judgment ruling.